## Commonwealth v. Moskorison, Appellant.

Argued November 13, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Charles N. Caputo,* with him *James Ceris,* for appellant.

*Henry R. Smith, Jr.,* Assistant District Attorney, with him *William S. Rahauser,* District Attorney, for appellee.

OPINION BY HIRT, J., January 17, 1952:

Defendant was convicted of common law rape and was sentenced. In this appeal it is argued that under the evidence he may have been guilty of fornication only and accordingly there is reversible error in the failure of the trial judge in his charge to clearly differentiate fornication from rape and to instruct the jury that under the circumstances the defendant could be convicted of the misdemeanor alone. We find no merit in the contention.

Following a casual acquaintance of but a few days Katherine Neely, then 19, made a tentative date with the defendant for Thursday, October 27, 1949. In the evening of that day at the request of the defendant she left her girl friends at a bowling alley in Sewickley where they had been bowling and went with him to an automobile parked on a nearby street. He had

represented to her that his companion Edward Stone and his girl friend were in the car and it was upon the understanding that this was a 'double date' that she agreed to go with him. When she observed Stone alone in the car she attempted to withdraw and return to the bowling alley whereupon the defendant shoved her into the car. Stone drove the car to Ambridge where he, in good faith or otherwise, tried to get another girl, but without success. On the way back to Sewickley, at defendant's suggestion, Stone drove into a secluded side road in Edgeworth Park and came to a stop. There according to the girl's testimony which was accepted by the jury, the defendant assaulted her, choked her to stop her screaming and forcibly and against her will had intercourse with her on the rear seat of the automobile. Stone who was a witness to the intercourse denied that the girl made any outcry but he did admit that she was sobbing after the occurrence and for that reason he suggested that they take her home. On the way, according to the girl's recital of the facts the defendant kept shaking her and among other things said: "You just watch your step and you will learn after this not to break a date with me . . . You are going to be pretty sorry if you tell anything to anybody or give them the slightest inkling. I can fix your reputation so any boy in Sewickley or anywhere won't have anything to do with you. You will be awfully sorry". She was discharged from the automobile near the bowling alley and because she was in no condition to walk through the main part of Sewickley to her home she went to the nearby rooms of one of her girl friends with whom she had been bowling early in the evening. The other members of her bowling team were there also. She was hysterical and while she did not tell them what had occurred, from her disheveled appearance also, they sensed that she had been assaulted and advised her to go to the

police. She later was taken to the home of her brother-in-law where she was staying. On Friday, the following day, she reported the circumstances of the rape to him and he immediately notified the police. On Saturday she went to her parents, who were living some distance from Sewickley and informed them that she had been assaulted and raped by the defendant.

At the oral argument appellant's counsel attempted to make much of the fact that when he called Katherine Neely the day after the occurrence she agreed to see him again at her home the following Wednesday evening at 7:30. The circumstances indicate her reasons for her apparent willingness to make this second date with him. She knew him only by the name of John Morrison, and the address which he gave her was fictitious. She had determined to prosecute him for the offense before he called her by telephone on Friday and the ruse of acceding to his request was the means of accomplishing his arrest. When he appeared at her house the following Wednesday she remained in hiding while a police officer who had been notified and was in waiting took him into custody.

The defendant testified that the girl offered no resistance to his advances and that he implied consent from her actual cooperation in the consummation of his desires. All of the credible testimony is to the contrary. Under the circumstances the following excerpt from the charge of the court, following a painstaking review of all of the testimony is an entirely adequate instruction of the law of the case: "Rape is the unlawful carnal knowledge of a woman, that is, unlawful sexual intercourse with a woman, by the use of force, against her will and without her consent. *If no force was used or consent was given the crime is not rape, but is fornication only.* Now in determining whether force was used, and if so, was it sufficient to constitute this offense, it must be such force as might be described

as physical violence, not what might be termed improper advances. And when you consider the question of whether there was consent you must carefully distinguish between consent and submission. Force sufficient to induce a woman to submit without additional resistance is not consent because consent is a free act of the will, a voluntary thing. A woman might quit resisting because she has been beaten into submission or tortured into submission, but she could not be said to have consented. *However, if she does give real consent at any time the crime is not rape."* (Emphasis added).

Fornication is included in the single charge of rape and on an acquittal of rape a defendant may be convicted of the constituent offense of fornication. *Commonwealth v. Parker,* 146 Pa. 343, 23 A. 323. The trial judge in this instance did perform his duty of clarifying the issues for decision by the jury. There was no necessity for a definition of fornication; there is none in The Penal Code of June 24, 1939, P. L. 872, which makes it a misdemeanor, 18 PS §4506. The charge did refer to the offense of fornication in its relation to the charge of rape and at its close the trial judge inquired: "Before I take up the specific requests, are there any matters which I have neglected to instruct the jury on? Are there any matters that should be called to the jury's attention?" That was the time for defendant's counsel to request additional instructions. No such request was made, probably, as in *Commonwealth v. Walker,* 33 Pa. Superior Ct. 167, in the hope, if not the expectation, that the jury might bring in a general verdict of not guilty. The charge was free from fundamental error and since the defendant took only a general exception he cannot now complain of mere inadequacies in the instructions as given. *Commonwealth v. Brown,* 158 Pa. Superior Ct. 226, 44 A. 2d 524; *Commonwealth v. Svanos,* 153 Pa. Superior Ct. 547, 34 A. 2d 902. The

absence of a specific instruction on the trial of an indictment for rape, that the prisoner might be convicted of fornication if the jury doubted his guilt of the more serious charge is not ground for reversal, if it appears that no such instruction was asked for. *Commonwealth v. Peach,* 170 Pa. 173, 32 A. 582.

Judgment of sentence affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal was made a supersedeas.

GUNTHER, J., dissents.