Commonwealth *v.* Friday, Appellant.

398

Argued March 24, 1952. Before RHODES,. P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Desmond J. McTighe,* with him *Robert Trucksess* and *Duffy, McTighe & McElhone,* for appellant.

*Anthony L. Differ,* Assistant District Attorney, with him *J. Stroud Weber,* District Attorney, *Roger B. Reynolds* and *C. Howard Harry, Jr.,* Assistant District Attorneys, for appellee.

OPINION BY RENO, J., August 7, 1952:

Appellant was indicted for rape. On the second trial[1] the court charged: "You might find one of three verdicts, guilty of rape, guilty of attempt to commit rape, or not guilty." He was found guilty of attempted rape. His motion for a new trial was allowed, but, upon the Commonwealth's petition for reargument, which was allowed, the new trial was refused. Appellant was sentenced to pay a fine of $1.00 and undergo imprisonment in the county jail for 4 months. On this appeal he did not question the sufficiency of the

---

[1] At the first trial the jury disagreed and was discharged. . ...

evidence to sustain the conviction and limited his argument to alleged trial errors.

Only enough of the testimony will be stated to furnish a broad background against which the legal problems can be discussed. In the early afternoon of August 24, 1950, Gertrude McKendrick, aged 34, a married woman living with her husband and the mother of 5 children,[2] was driving her Chevrolet coupe from her home to her work in a factory. She passed another car, allegedly driven by appellant, who waved to her, followed her, cut in front of her car, and stopped. She stopped and attempted to reverse her car but it stalled. Appellant, so she testified, left his car, came to the left side of her car, asked for a date, grabbed her head through the front window, entered her car, pushed her from the driver's position, placed her left arm against the back of the seat, and her right arm under her body, forced one leg over the back of the seat and the other down toward the floor and, with his feet protruding out of the window, penetrated her sexual organ, apparently without emission.

Against this was the testimony of two witnesses, produced by appellant, friends and co-workers of Mrs. McKendrick, who testified that she told them that she had been accosted by a stranger, who asked for a date, pulled up her clothes and kissed her, but that she had not been raped.

Appellant's defense was an alibi and a denial that Mrs. McKendrick had been raped. However, he admitted that he had told State police that he had met the woman in the way described by her, talked to her and kissed her while leaning in the door of her car, but

_____

[2] Defendant was 28 years of age, married, living with his wife, the father of two children.

denied that he had entered the car.[3] Further reference will be made to this pre-trial statement.

Appellant's contentions will be examined in the order in which they appear in his brief.

I. As stated, the trial judge charged that appellant might be found guilty of rape or attempted rape or acquitted. Appellant argues that he should also have charged that he might be found guilty of simple assault and battery. At the end of the charge the trial judge asked: "Are there any suggestions or corrections or anything we may have overlooked or misstated?" Appellant entered several objections and exceptions to portions of the charge, but made no complaint of the omission he now characterizes as fundamental error.

The question has been settled by *Com. v. Moskorison,* 170 Pa. Superior Ct. 332, 336, 85 A. 2d 644, where Judge HIRT said: "The absence of a specific instruction on the trial of an indictment for rape, that the prisoner might be convicted of fornication if the jury doubted his guilt of the more serious charge is not ground for reversal, if it appears that no such instruction was asked for." See also *Com. v. Thomas,* 275 Pa. 137, 118 A. 667; *Com. v. Peach,* 170 Pa. 173, 32 A. 582; *Com. v. Magliarditi,* 158 Pa. Superior Ct. 461, 45 A. 2d 244.

II. The trial judge charged: "Well, does that mean that the person who is charged with having committed this act did not penetrate? If that is the contention, then it may be that the person would be guilty or might be found guilty of an attempt to commit rape, which is a misdemeanor, as distinguished from a felony." The Act of March 31, 1860, P. L. 382, §93, under which as-

---

[3] He also admited in the instant trial that at the first trial he had denied making this pre-trial statement.

sault and battery with intent to commit rape was punishable as a misdemeanor, was superseded by The Penal Code of June 24, 1939, P. L. 872, §722, 18 P.S. §4722, and that offense is now a felony. Attempted rape is the equivalent of assault and battery with intent to ravish. *Com. ex rel. Conrad v. Warden of Eastern State Penitentiary,* 165 Pa. Superior Ct. 374, 67 A. 2d 645. The charge was erroneous. But again, with ample opportunity to secure a correct charge, appellant remained silent, and we have not been persuaded that he was harmed by the error.

Indeed, so far from harming appellant, the judge's error really benefited him. Under the impression, probably, that no specific punishment had been prescribed for the misdemeanor of attempted rape, (Cf. *Com. v. Orris,* 136 Pa. Superior Ct. 137, 7 A. 2d 88), he sentenced appellant to a fixed term in the county jail instead of imposing a minimum and maximum sentence to be served in the penitentiary, as provided for in The Penal Code of 1939, supra.

III. The pre-trial statement, to which reference has been made, was taken under circumstances, concerning which there is conflict in the testimony, but of which the following is a fair summary.

While driving in his car with his wife and son on August 29th at about 6 p.m. he was picked up by two State Policemen who took him to their barracks at Collegeville. While there he was identified in the usual police line-up by Mrs. McKendrick and by Mrs. McDermott, who had seen appellant drive away from the scene of the alleged crime. Thereafter he was taken past the same scene and at 11 p.m. was lodged in the police station at Lansdale. At 2:30 p.m. of the following day he was arraigned before a justice of the peace, given a preliminary hearing, and committed to the county jail at Norristown. He was in police custody not more than 21 hours before the arraignment.

At the Lansdale police station breakfast was served to him as well as lunch. He was questioned from time to time by State Police Officer Kweder, no one interrogation continuing more than 10 minutes. Either he asked for the information, or, without asking, he was told that the penalty for rape was 15 years, and thereafter he made the pre-trial statement related above. There was no physical force or mental torture or threats or promises, no long or exhausting interviews, no deprivation of food or sleep. He was not held incommunicado, as he now argues. His wife accompanied him to the barracks, was interviewed by the police officers, and she knew where he was. Appellant's father and his two brothers called at the barracks at 9 p.m., and left to procure and return with time sheets showing that appellant had been working the entire day of August 24th,[4] but they did not return before 10:30 p.m., when the officers took appellant to the scene of the crime. On the following morning, before the preliminary hearing, the police interviewed the father at the home of the district attorney.

There was testimony that appellant requested the services of counsel. He testified that he told the police officers he had three dollars and wanted a lawyer, but, facetiously, as we read the printed record, he was told "you couldn't get to first base with three dollars with a lawyer." There are intimations in the record that some one, acting on appellant's behalf, had been in touch with a Phoenixville lawyer who may have telephoned to the barracks but did not appear there or at the police station. Evidently, there was a race between the police and the possible appearance of a lawyer; for

---

[4] It subsequently developed that appellant had not been working on that day. He relied as an alibi on his presence in the Chiropractor's Hospital in Norristown at the time the crime was committed.

Officer Kweder candidly testified on cross-examination: "Q. And yet you still felt you wanted to make a further investigation and wouldn't let a lawyer see him until after that was made? A. That is right. I figured that we could break him down, and we did. The following afternoon he broke down."

However that may be, appellant's statement was made voluntarily. Officer Kweder testified that at the preliminary hearing: "His father showed me a newspaper. He said, 'You have the wrong man.' He said, 'Here is the man you are looking for', and the defendant, LeRoy Friday, Jr.,—he said, 'Pop, I told them everything. Keep quiet.' The father still insisted that I read the newspaper and still insisted that we had the wrong man, and the defendant repeated again, 'Pop, I confessed. I told them everything.' "[5]

Relying upon *Watts v. Indiana,* 338 U. S. 49, 69 S. Ct. 1347, and *Turner v. Pennsylvania,* 338 U. S. 62, 69 S. Ct. 1352, appellant argues that his statement was a coerced confession. In the *Watts* case the prisoner was held for 6 days, during which he was questioned by relays of officers from 5:30 or 6 p.m. until 2 or 3 a.m., before he was taken to a magistrate. In the *Turner* case the prisoner was questioned by relays of officers for 4 to 6 hours a day for 5 days before he was taken to a magistrate. Factually, at least, the instant case does not fit into the *Watts* and *Turner* pattern.

Whatever be the impact of the opinions of the United States Supreme Court, this Court is bound by the decisions of the Supreme Court of Pennsylvania,[6]

---

[5] The father was called as a witness for appellant but he was not examined concerning this episode.

[6] "Upon any question whatever before the said [superior] court the decision of the supreme court shall be received and followed as of binding authority": Act of June 24, 1895, P. L. 212, §10, 17 P.S. §198.

which has provided the controlling authority in a recent case, *Com. v. Shupp*, 365 Pa. 439, 446, 448, 75 A. 2d 587. It was decided after the *Watts* and *Turner* cases, and Mr. Justice BELL, speaking for our Supreme Court, indicated that its decision was in harmony with the cases decided by the Supreme Court of the United States. Shupp was held for 15 days without a preliminary hearing, during which he was frequently questioned by the authorities. He asked for counsel but apparently abandoned his request. At least he talked freely and voluntarily without the presence or assistance of counsel. The Court held, *"There is no prescribed time within which a preliminary hearing must be held."* . . . *"There is no provision in the law of Pennsylvania,* or any decision of the United States Supreme Court or of our Court which requires *that a person arrested,* even though on a charge of murder, *must be provided with counsel as soon as he is taken into custody, or prior to indictment or arraignment."* Reliance was placed upon *Com. v. Agoston,*[7] 364 Pa. 464, 483, 72 A. 2d 575, and the vigorous statement of Chief Justice MAXEY was quoted: *"(1) The fact that the confessor is in custody and has no counsel does not invalidate a confession made by him.* (2) The fact that the interrogation of a suspect continues until he confesses is not per se a ground for invalidating his confession, nor is the fact that the interrogation lasted for a considerable period of time any ground for invalidating the confession, unless the interrogation was so long in duration as to amount to mental or physical coercion and duress." (Italics are Justice BELL's.)

---

[7] The United States Supreme Court denied certiorari. 340 U. S. 844, 71 S. Ct. 9. This case deserves diligent study by the profession and the police. Note the Chief Justice's statement, p. 480: "The only function counsel could have at the time of a suspect's interrogation would be to instruct him to 'keep his mouth shut' ".

The foregoing summary of the evidence and the citation of the relevant authorities support the conclusion that appellant's constitutional rights were not violated and that his oral confession was properly admitted.

IV. When Officer Kweder testified he referred to notes which he had made for the purpose of refreshing his recollection. Appellant's counsel asked for and received permission to inspect the notes, and used them in his cross-examination of Kweder. In addition, counsel demanded production of the entire file of records and papers relating to the case lodged in the Collegeville barracks and for that purpose caused a subpoena duces tecum to be served on the commanding officer. Officer Kweder informed the trial judge that the orders of his superiors forbade production of the records of the State Police. Consequently, the trial judge ruled that a subpoena duces tecum served upon a subordinate policeman was ineffective and that service must be made upon the Commissioner of the State Police.

The ruling was manifestly correct. While the records were in the physical possession of the commanding officer of the Collegeville barracks, he was not the legal custodian. The executive head of the State Police, the Commissioner of the State Police, is the legal custodian of the records, and their production in the courts can be procured, where the public interest requires their disclosure, only under a subpoena duces tecum, served upon the Commissioner. See *Mark's Appeal*, 121 Pa. Superior Ct. 181, 183 A. 432; *Hartranft's Appeal*, 85 Pa. 433.

Moreover, it should be noted, appellant did not intend to impeach Kweder's credibility by statements in the police files. In his brief appellant candidly stated: "It was very material to the credibility of the Commonwealth's witnesses, Mrs. McKendrick and Mrs. McDermott, to know exactly what description they gave the State Police of the alleged assailant and his car.

. . . If the records showed that the first description given by Mrs. McKendrick and Mrs. McDermott to the State Police was that of a bald headed man instead of a dirty blond or was that of a man 7' 2" tall instead of 5' 7"'" or was that of a man 58 years old instead of 28 years old, these discrepancies certainly would have been material to the case." That is, appellant would have the Commonwealth supply information whereby appellant could test the credibility of the Commonwealth's own witnesses. No such duty rests upon the State Police.

Should judicial pampering of convicts and defendants continue, we may arrive at the point where the prosecution will be bound to reveal every structural weakness in its case; that is, supply a defendant with a reasonable doubt. Until then, however, the Commonwealth is under no obligation to place the secret files of police investigators at the disposal of defendants. On defendant's request, a district attorney should allow him to examine a report submitted to the district attorney of an examination made by an expert witness. *Com. v. Neill,* 362 Pa. 507, 67 A. 2d 276. But a district attorney does not have custody or control of reports of investigations made by the State Police and cannot, without the consent of the Commissioner, produce them or reveal their contents.

V. Appellant contends that the trial judge failed to relate the rule of reasonable doubt to those parts of his charge which covered appellant's evidence of good character and alibi.

In respect to the character evidence the trial judge charged that "it may raise a reasonable doubt." Concerning the alibi, after stating that it was an affirmative defense which the defendant was obliged to prove by a preponderance of the evidence, said: "[T]he fact that that burden is placed upon him in the presenta-

tion of his affirmative defense does not change the rule that under all the evidence you must be satisfied beyond a reasonable doubt, and it goes in with all the other testimony as to whether or not it creates the reasonable doubt referred to earlier in this charge."

The instructions contained the essential requirements of *Com. v. Padden,* 160 Pa. Superior Ct. 269, 50 A. 2d 722, (character evidence), and *Com. v. Jordan,* 328 Pa. 439, 196 A. 10, (alibi) and, in the absence of a request for further and more explicit instructions, were adequate.

VI. Finally, appellant contends that the "conduct and remarks of the assistant district attorney throughout the trial were prejudicial to the defendant."

The trial consumed five days and the printed testimony runs to 488 pages. It was a hotly contested case and produced the usual tension and wrangling. Our study of all the testimony informs us that the assistant district attorney was an aggressive prosecuting officer, and appellant's attorneys were equally belligerent. The record discloses that counsel on both sides are vigorous trial lawyers, amply able to take care of themselves and their client's contentions. Combative conduct on one side provoked and justified strenuous retaliation by the other. The record affords no data for the appraisal of responsibility. In this situation we shall not draw a line where the court below would not. At the close of the trial, after listening to a wordy dispute between counsel at side-bar, Judge CORSON said: "Oh, let the whole matter drop." And that is about all that any court, nisi prius or appellate, can say when both sides are equally right and equally wrong.

The judgment and sentence are affirmed; and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be

committed by that court until he has complied with the sentence, or such part thereof as had not been performed when the appeal was made a supersedeas.