451 A.2d 729

**COMMONWEALTH of Pennsylvania**

v.

**Richard Harry FORTUNE, Appellant.**

Superior Court of Pennsylvania.

Submitted May 5, 1982.

Filed Oct. 8, 1982.

442

Peter T. Campana, Williamsport, for appellant.

James J. Rosini, District Attorney, Northumberland, for Commonwealth, appellee.

Before SPAETH, ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

Appellant, Richard Harry Fortune, was convicted by a jury on November 19, 1979, of second degree murder,[1] rape,[2] and criminal conspiracy to commit second degree murder.[3] After trial counsel timely filed post-verdict motions, he was replaced by present counsel who also filed additional post-verdict motions. These motions were denied by the trial court. Appellant was sentenced to life imprisonment on the second degree murder conviction and a concurrent term of not less than ten nor more than twenty years imprisonment

1. Act of 1978, April 28, P.L. 84, No. 39, § 1; 18 Pa.C.S.A. § 2502(b).

2. Act of 1972, Dec. 6, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 3121.

3. *Id.*; 18 Pa.C.S.A. § 903.

on the criminal conspiracy conviction. He was additionally sentenced to a consecutive term of imprisonment of not less than ten nor more than twenty years on the rape conviction. This appeal followed.

Appellant raises two issues on appeal: (1) trial counsel was ineffective for failing to call as a defense witness appellant's brother, Roy Fortune; and (2) the evidence is insufficient, as a matter of law, to convict appellant of the crimes charged. We raise a third issue, sua sponte, that is that appellant was illegally sentenced when a consecutive sentence was imposed on him for the rape conviction.

We find no merit to appellant's first contention, and we adopt the finding of the trial court in regard to the issue of ineffectiveness.

Appellant's second contention is that the evidence is insufficient, as a matter of law, to sustain the convictions. We find no merit to this argument.

It is well settled that the evidence must be viewed in the light most favorable to the verdict winner, in this case the Commonwealth. *Commonwealth v. Rife,* 454 Pa. 506, 312 A.2d 406 (1973). It is the province of the factfinder to weigh the evidence. *Commonwealth v. Alston,* 461 Pa. 664, 337 A.2d 597 (1975). The factfinder can believe all, part, or none of the evidence. *Commonwealth v. Smith,* 457 Pa. 638, 326 A.2d 60 (1974). The test for the sufficiency of the evidence was set forth in *Commonwealth v. Jackson,* 466 Pa. 311, 313, 353 A.2d 370, 371 (1976) as follows:

> The test for the sufficiency of the evidence is whether accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the factfinder could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted.

The record so viewed establishes that on January 26, 1979 in the early afternoon, appellant, his brother, Roy Fortune, and Robert Martin were riding in Martin's mother's car in Pottsville when they picked up the victim, Cynthia Nosek, who

was hitch-hiking. While driving around the area, they stopped to buy food and alcoholic beverages. Later in the day, they travelled to and stopped at a remote area of Northumberland County referred to as the "Grate." Appellant told the victim to remove her clothes. She refused, stating that she had previously been raped. As appellant began to remove her clothes, she indicated that she would take her clothes off, and she removed her blouse and bra. Appellant removed her pants and placed her in the rear of the station wagon. The victim went into a convulsion, appellant had sexual intercourse with her, and she became unconscious. Appellant stated afterwards to his co-conspirators that "we raped her, we can't let her go because she'll go to the cops and we'll get in trouble." The victim was beaten in the head, chest and pelvic areas and was repeatedly stabbed, which led ultimately to her death.

■ Based on the applicable law, we believe that the evidence was sufficient to convict appellant of murder of the second degree (felony-murder), rape and criminal conspiracy.

■ Although appellant has not raised the question of the imposition of an illegal sentence, we may raise the issue, sua sponte, since the question of the legality of the sentence is never waived. *Commonwealth v. Belgrave,* 258 Pa.Super. 40, 49, 391 A.2d 662, 666 (1978).

■ While the criminal conspiracy conviction does not merge into the completed offense of second degree murder, *See Commonwealth v. Boerner,* 281 Pa.Super. 505, 422 A.2d 583 (1980), we believe that the consecutive sentence imposed on the underlying felony of rape should have merged with the sentence of life imprisonment imposed on the felony-murder conviction.

The relevant statutes provide as follows:

**Murder of the second degree**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

Act of 1978, April 28, P.L. 84, No. 39, § 1, 18 Pa.C.S.A. § 2502(b).

**Definitions**— . . .

**Perpetration of a felony**—The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, *rape,* or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping. (emphasis added)

*Id.,* 18 Pa.C.S.A. § 2502(d).

The constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (a) protection against a second prosecution for the same offense after an acquittal; (b) protection against a second prosecution for the same offense after conviction; and, (c) protection against multiple punishments for the same offense. *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *U.S. v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). Our concern in this case is with the third guarantee. Recently, the Pennsylvania Supreme Court in *Commonwealth v. Tarver,* 493 Pa. 320, 426 A.2d 569 (1981), held that under the 1939 Penal Code,[4] the underlying felony of robbery was a constituent offense of felony murder. While the felony murder statute which governs the present case is a different one than applied in *Tarver,* we believe that a similar holding is called for here.

Additionally, the Supreme Court of the United States in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), discussed the District of Columbia felony-murder statute which is similar to 18 Pa.C.S.A. § 2502. In that case, Whalen was convicted of killing the victim in the perpetration of the rape. He was sentenced to consecutive sentences of imprisonment on each conviction. The United States Supreme Court held that the sentence imposed was improper because the rape merged into the murder for sentencing purposes:

In the present case, however, proof of rape is a necessary element of proof of the felony murder, and we are unper-

4. Act of 1939, June 24, P.L. 872, § 701; 18 Pa.C.S. § 4701.

suaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense.

*Id.,* 694, 100 S.Ct. at 1439, 63 L.Ed.2d at 725.

In the instant case, we find that the sentence imposed on the underlying felony, rape, should have merged at sentencing with the sentence imposed on the second-degree murder conviction. We need not remand, since we are authorized to vacate the consecutive sentence imposed on the rape conviction. *Commonwealth v. Eberts,* 282 Pa.Super. 354, 422 A.2d 1154 (1980). We, therefore, affirm the sentence of life imprisonment on the second degree murder conviction and the concurrent term of imprisonment on the criminal conspiracy conviction, and we vacate the consecutive sentence imposed on the rape conviction.

Judgment of sentence is affirmed on the second degree murder conviction and on the criminal conspiracy conviction, and vacated on the rape conviction.

## APPENDIX

## OPINION

SAMUEL C. RANCK, Judge:

Before the Court are Defendant's post-trial motions for new trial and in arrest of judgment. Defendant was convicted by a jury on November 19, 1979, of murder in the second degree, rape, and conspiracy to commit murder in the second degree. Defendant's trial counsel filed post-verdict motions and supplemental motions on his behalf. Trial counsel was subsequently replaced by present counsel who was permitted to file additional post-verdict motions. Of all these, only two grounds have been briefed and argued before the Court, and therefore, those will be the only grounds considered. *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978).

I.

Defendant first challenges the sufficiency of the evidence to convict him of the crimes for which he was charged.

Particularly, Defendant contends that there was insufficient evidence of "forcible compulsion" or "threat of forcible compulsion" to sustain the charge of rape, and that if the rape conviction cannot stand as an underlying felony, then the felony murder and the conspiracy to commit felony murder convictions must both fall in a domino-type manner.

The Crimes Code defines rape in section 3121:

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution; ...

The requirement that the act be committed by forcible compulsion or threat of forcible compulsion has recently been explained by the Superior Court in *Commonwealth v. Rough,* [275] Pa.Super. [50], 418 A.2d 605 (1980):

The force necessary to support a rape conviction need only be such as to establish a lack of consent, and it is relative depending upon the particular circumstances. *Commonwealth v. Irvin,* 260 Pa.Super. 122, 393 A.2d 1042 (1978). [C]onsent is an act of free will. It is not the absence of resistance in the face of actual or threatened force inducing a woman to submit to a carnal act; active opposition is not a prerequisite to finding lack of consent. *Commonwealth v. Hayden,* 224 Pa.Super. 354, 356–57, 307 A.2d 389, 390 (1973). See *Commonwealth v. Moskorison,* 170 Pa.Super. 332, 85 A.2d 644 (1952). Outcry, struggle and fresh complaint need not be proven to sustain a rape conviction, but are merely factors to be weighed by the trier of fact. *Johnson Appeal,* 445 Pa. 270, 284 A.2d 780 (1971); *Commonwealth v. Hornberger,* 199 Pa.Super. 174, 184 A.2d 276 (1962).

275 Pa.Super. [at 56–57], 418 A.2d at 608.

Viewing the evidence in a light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is clearly sufficient evidence in the record for

448

the jury to have found Defendant guilty of rape beyond a reasonable doubt. The record reflects that on January 26, 1979, the Defendant, his brother Roy Fortune, and Robert Martin were riding in Martin's mother's car in Pottsville, Pennsylvania, when they picked up the victim, Cynthia Nosek, while she was hitchhiking. They proceeded to drive around the area, eventually returning to Northumberland County, stopping along the way to buy food and alcoholic beverages. Late in the afternoon they traveled to a remote area of the County referred to as the "Grate." Shortly after arriving, the Defendant told Cynthia to remove her clothing. She refused, stating that she had been raped once before. When he began to remove her clothing she indicated she would do this herself, and proceeded to take off her blouse and bra. The Defendant removed her pants and placed her in the rear of Martin's station wagon. She became unconscious, as if in a convulsion, and the Defendant had intercourse with her. The Defendant admitted afterwards that, "We raped her, we can't let her go because she'll go to the Cops and we'll get in trouble."

While there is no evidence of a struggle with the Defendant, her initial refusal to undress and her statement that she had been raped before indicates Cynthia's awareness of what the Defendant had in mind and her opposition to it. Furthermore, as these events took place in a remote area of the County unfamiliar to the victim, it is not surprising that she made no further efforts to protect herself. Finally, by stating that the victim had been raped, the Defendant has indicated his own awareness that his intercourse with her had been without her consent. For the foregoing reasons, the claim of insufficiency of the evidence is without foundation.

II.

Defendant has also asserted that his trial counsel was ineffective by failing to call as a defense witness the Defendant's brother, Roy Fortune, an eyewitness to the events of January 26, 1979. An evidentiary hearing was held to determine the basis for trial counsel's decision.

The hearing testimony indicated that the Defendant and Roy initially consulted with Harry Klein, Esq., Chief Public Defender of Northumberland County. The facts as related to Attorney Klein by Roy were substantially that it was Martin and not the Defendant who raped and killed the victim. Roy later informed the Defendant of his willingness to testify on the Defendant's behalf at trial. However, Roy's own counsel, Jack C. Younkin, Esq. indicated that it would have been highly prejudicial to his client's interests for him to have testified for the Defendant, as Roy's own trial for offenses arising out of the events of January 26, 1979, was scheduled for a date later than the Defendant's trial. Attorney Younkin would have advised Roy of this, and of his right against self-incrimination, had Attorney Klein attempted to have him testify.

Attorney Klein decided not to call Roy at the Defendant's trial because Roy did not impress him as one likely to be an effective witness. He considered that Roy's non-assertive personality would have made him susceptible to becoming confused or excited on cross-examination, and that his direct testimony would add little to the Defendant's testimony. Attorney Klein also considered the Defendant to be a strong witness with a better ability to communicate effectively with the jury than his brother.

The standard to be applied when evaluating the effectiveness of counsel's representation was set out in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967):

[c]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record.

427 Pa. at 604, 235 A.2d at 352.

Taken as a whole, the record at the evidentiary hearing reflects that Attorney Klein's decision not to call Roy was

based on his reasonable evaluation of the relative merits of what Roy could offer in furtherance of the Defendant's cause. It also might be noted that had Roy been called as a witness he would have been subject to cross-examination, not only as to his bias as a close family member of the Defendant, but also as a corrupt and polluted source as an accomplice. It is true that one who has exculpatory evidence to offer would ordinarily be a prime candidate for calling at trial, and there are cases which have held that failure to do so is ineffective assistance of counsel. See eg. *Commonwealth v. Stiefel,* [286] Pa.Super. [259], 428 A.2d 981 (1981). However, where the failure to call a witness is reasonably designed to effectuate the Defendant's interests, as it was here, counsel has not acted ineffectively. *Commonwealth v. Banks,* 267 Pa.Super. 10, 405 A.2d 1277 (1979); *Commonwealth v. Robinson,* 232 Pa.Super. 328, 334 A.2d 687 (1975).

## ORDER

AND NOW, September 17, 1981, after due consideration of the written and oral arguments of counsel, IT IS HEREBY ORDERED AND DIRECTED that the Defendant's Motions for New Trial and In Arrest of Judgment are DENIED.