J-S04037-26          2026 PA Super 32

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                      :         PENNSYLVANIA
                                        :
              v.                         :
                                        :
                                        :
MARCUS R. JOHNSON                    :
                                        :
           Appellant              :     No. 877 EDA 2025

Appeal from the PCRA Order Entered March 20, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-0014428-2014

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

OPINION BY NEUMAN, J.:                   **FILED FEBRUARY 23, 2026**

      Appellant, Marcus R. Johnson, appeals *pro se* from the post-conviction court's March 20, 2025 order dismissing, as untimely, his second petition for relief filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant argues that he meets the new-retroactive-right exception of 42 Pa.C.S. § 9545(b)(1)(iii) based on the United States Supreme Court's decision in **Smith v. Arizona**, 602 U.S. 779 (2024).  After careful review, we affirm.

      The facts of Appellant's case are not germane to our disposition of his appeal.  We only note that the evidence presented at Appellant's jury trial established he shot and killed his girlfriend during an altercation.  **See** PCRA Court Opinion and Order (PCOO), 3/20/25, at 4 (citation omitted).  At trial,

> Philadelphia Deputy Medical Examiner Dr. Albert Chu, an expert in forensic pathology, [testified] the decedent suffered six distinct gunshot wounds, including two penetrating, fatal wounds to the back of her head, two non-fatal wounds to the left forearm, a non-fatal wound to the right forearm, and a graze wound to the left

shoulder. One penetrating, fatal wound to the back of the decedent's head travelled through the victim's skull and brain back to front, left to right, and slightly upward, coming to rest near the decedent's right ear. The decedent's other head wound entered the neck near the base of the skull, fractured the first cervical vertebra, and was recovered on the right side of the decedent's back, near the lower neck. Dr. Chu characterized the second wound as immediately fatal, as the projectile struck the part of the spinal cord that controlled the decedent's breathing and heartbeat. Each of the decedent's wounds was consistent with shots fired while the decedent's back faced the shooter. Dr. Chu concluded, to a reasonable degree of medical certainty, that the manner of death was homicide caused by multiple gunshot wounds.

*Id.* (citation omitted).

On June 27, 2016, the jury convicted Appellant of first-degree murder and possessing an instrument of crime. That same day, the court sentenced him to life imprisonment, without the possibility of parole, for his murder conviction. This Court affirmed Appellant's judgment of sentence on July 13, 2017, and our Supreme Court denied his petition for allowance of appeal on November 28, 2017. *See Commonwealth v. Johnson*, 175 A.3d 375 (Pa. Super. 2017) (unpublished memorandum), *appeal denied*, 175 A.3d 215 (Pa. 2017).

Appellant thereafter litigated a timely PCRA petition, which was denied. This Court affirmed on appeal, and our Supreme Court denied his subsequent petition for allowance of appeal. *See Commonwealth v. Johnson*, 241 A.3d 368 (Pa. Super. 2020) (unpublished memorandum), *appeal denied*, 252 A.3d 596 (Pa. 2021).

On November 15, 2024, Appellant filed a second *pro se* PCRA petition, which underlies this appeal. Therein, he argued Dr. Chu's trial testimony was inadmissible under the United States Supreme Court's recent decision in **Smith**, discussed *infra*. **See** PCRA Petition, 11/15/24, at 7-11. Appellant also maintained **Smith** satisfies the new-retroactive-right exception of 42 Pa.C.S. § 9545(b)(1)(iii), thereby triggering the PCRA court's jurisdiction to review his untimely challenge to the admission of Dr. Chu's testimony. **Id.** at 4-5.

The PCRA court appointed Appellant counsel on December 2, 2024. On January 29, 2025, counsel filed a petition to withdraw and 'no-merit letter' pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On February 13, 2025, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition on the basis that it was untimely and did not meet a timeliness exception. Appellant filed a *pro se* response on March 10, 2025. On March 20, 2025, the court issued an order and opinion dismissing his petition and granting counsel's petition to withdraw.

Appellant filed a timely *pro se* notice of appeal. It does not appear the court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court relied on its March 20, 2025 opinion in satisfaction of Rule 1925(a). Herein, Appellant raises six issues for our review:

> I. Since 42 Pa.C.S.[] § 9545(b)(1)(iii) is open to the review of federal claims, and contains no express language limiting a PCRA court's ability to review a defendant's claim that rests on a

Supreme Court decision that announced a new constitutional principle that is considered an "Old Rule[,"] does the Supremacy Clause mandate that the court grant the relief that federal law requires?[] And if so, did the PCRA court err as a matter of law, and consequently violate Appellant's due process rights under the Fourteenth Amendment of the U.S. Constitution, by concluding that it lacked jurisdiction to review the merits of Appellant's Confrontation claim, which asserted a violation of his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution?

II. Since the retroactive applicability of a constitutional decision of the United States Supreme Court is a federal question, does the Supremacy Clause bound PCRA courts to the federal retroactivity doctrine concerning the constitutional principle announced in **Smith**…, where the **Smith** holding yielded an "Old Rule" which pursuant to federal law applies retroactively on collateral review?[] And if so, did the PCRA court err as a matter of law, and consequently violate Appellant's due process rights under the Fourteenth Amendment of the U.S. Constitution by concluding that the constitutional principle announced in **Smith** was not retroactive?

III. Did the PCRA court err as a matter of law, and consequently violate Appellant's due process rights under the Fourteenth Amendment of the United States Constitution by applying an ambiguous interpretation to … the plain language of [section] 9545(b)(1)(iii) to bar review of Appellant's federal claim, which under federal law, would be reviewable?

IV. Since this appeal raises partial, rather than facial questions, concerning a potential constitutional conclict [*sic*] involving the [PCRA] court's interpretation and subsequent application of [section] 9545(b)(1)(iii) to Appellant's claim resting on federal law, does this case require a remand to the PCRA court in order to further develop the legal argument Appellant is seeking to present for this Courts [*sic*] consideration?[] Particularly where the foundation for this challenge was set forth in Appellant's objections to the PCRA court's [Rule] 907 notice, and, although the court ensured that the objections were made part of the record, the court did not address the legal substance contained therein when is [*sic*] issued its order and opinion on March 20, 2025?

V. Did the PCRA court err as a matter of fact and law in finding that Appellant's claim was waived? And, in just consideration of

the procedural history involving the instant claim, as well as the then state of the law regarding Rule 907 and PCRA counsel's ineffectiveness[,] would upholding the PCRA court's waiver conclusion result in a miscarriage of justice?

VI. Did the PCRA court err as a matter of fact, law, and legal precedent, and consequently violate Appellant's rights under the Sixth and Fourteenth Amendments of the U.S. Constitution, by concluding that the confrontation violation that occurred at his trial was a harmless error, and therefore Appellant was not entitled to relief pursuant to the U.S. Supreme Court['s] holding in **Smith**…?

Appellant's Brief at 3-4 (unnecessary capitalization and some internal quotation marks omitted).

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Ragan**, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. **See Commonwealth v. Bennett**, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

> **(b) Time for filing petition.--**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, section 9545(b)(2) requires any petition attempting to invoke one of these exceptions "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final on February 26, 2018, ninety days after our Supreme Court denied his petition for allowance of appeal and the time expired for him to file a petition for writ of *certiorari* with the United States Supreme Court. **See** U.S. Sup. Ct. R. 13(1) (stating "a petition for a writ of *certiorari* to review a judgment in any case … is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment"). Therefore, Appellant had until February 26, 2019, to file a timely petition, making his petition filed in November of 2024 untimely. Appellant must prove he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b) for this Court to have jurisdiction.

Appellant argues he meets the new-retroactive-right exception of section 9545(b)(1)(iii) based on **Smith**, and that Dr. Chu's testimony was

inadmissible under the *Smith* decision.  *See* PCRA Petition at 4; Appellant's Brief at 10.  Notably, Appellant seems to concede that *Smith* did not *create* a new constitutional right.  *See* Appellant's Brief at 11 (acknowledging the *Smith* Court's statement that its "holding … follows from all this Court has held about the Confrontation Clause's application for forensic evidence") (quoting *Smith*, 602 U.S. at 802).  He argues, however, that *Smith* satisfies the timeliness exception of section 9545(b)(1)(iii) because the Court recognized a new constitutional *principle* stemming from an "old rule" of constitutional law, and then applied that principle to a new factual scenario. *Id.* (emphasis added; unnecessary capitalization omitted); *see also id.* at 13 ("[T]he PCRA [c]ourt's reading of [section] 9545(b)(1)(iii) is unreasonably attenuated, and thus contravenes federal law[, a]s it conflicts with the Supreme Court's authority to 'recognize' when, and under what factual circumstances[,] a particular provision is to apply.").  Appellant also claims "it is axiomatic that the federal retroactivity doctrine necessitates that retroactive effect be given to the *Smith* holding in collateral proceedings."  *Id.* at 18 (internal quotation marks omitted) (citing *United States v. Johnson*, 457 U.S. 537, 549 (1982) ("[W]hen a decision of this Court merely has applied settled precedents to new and different factual situations, no real question has arisen as to whether the later decision should apply retrospectively.  In such cases, it has been a foregone conclusion that the rule of the later case applies in earlier cases….")).

Appellant's argument is unconvincing. Our Supreme Court has explained:

> With respect to the timeliness exception set forth in [s]ection 9545(b)(1)(iii) of the PCRA, our Court has held that the provision has two requirements:
>
>> First, it provides that the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or this [C]ourt after the time provided in this section. Second, it provides that the right "has been held" by "that court" to apply retroactively. Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively. The language "has been held" is in the past tense. These words mean that the action has already occurred, *i.e.*, "that court" has already held the new constitutional right to be retroactive to cases on collateral review. By employing the past tense in writing this provision, the legislature clearly intended that the right was already recognized at the time the petition was filed.
>
> [**Commonwealth v.**] **Abdul-Salaam**, 812 A.2d [497,] … 501[] [(Pa. 2002)] (specifically holding that "the language 'has been held' means that the ruling on retroactivity of the new constitutional law must have been made prior to the filing of the petition for collateral review" and "that a retroactivity determination must exist at the time that the petition is filed"). Additionally, in [**Commonwealth v.**] **Reid**, [235 A.3d 1124 (Pa. 2020),] this Court reaffirmed **Abdul-Salaam** and further explained:
>
>> The plain language [of section 9545(b)(1)(iii) of the PCRA] makes clear that, when dealing with an otherwise untimely PCRA petition, our collateral review courts are only "open" to a claim that a new constitutional right applies when the right "has been held by that court to apply retroactively." 42 Pa.C.S. § 9545(b)(1)(iii). In other words, because the "has been held" language "means that the ruling on retroactivity of the new constitutional law must have been made prior to the filing of the petition for collateral review[,]" **Abdul-Salaam**, 812 A.2d at 501, our state collateral courts are, in fact, *not* "open" to a claim that a

- 8 -

new constitutional right applies, *unless* the right has already been held to apply retroactively.

*Reid*, 235 A.3d at 1160-61 (emphasis in original).

*Commonwealth v. Taylor*, 283 A.3d 178, 187 (Pa. 2022) (emphasis in original; some capitalization omitted).[1]

In this case, we begin by assessing whether *Smith* recognized a new constitutional right. Prior to *Smith*, in *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine them. *Id.* at 59, 68. After *Crawford*, the Court "made clear that the Confrontation Clause applies to forensic reports" through the issuance of several decisions. *Smith*, 602 U.S. at 785. First, in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Court held that 'certificates of

_____

[1] We briefly address Appellant's argument that the PCRA court erred by interpreting section 9545(b)(1)(iii) as requiring a *new* constitutional right, where section 9545(b)(1)(iii) "never utilizes the word '[n]ew.'" Appellant's Brief at 20-21; *see also* Appellant's Reply Brief at 9-13. He also argues that a "federal constitutional right can never be 'new' *per se*, because the Constitution does not change from year to year." Appellant's Brief at 24 (unnecessary capitalization and citation omitted). Appellant further contends the statute's use of the word "recognized" is interchangeable with "interpretation" and, therefore, any decision interpreting a constitutional right should be construed as satisfying the timeliness exception. *See id.* at 25-28; Appellant's Reply Brief at 13. However, as set forth *supra*, our Supreme Court has interpreted section 9545(b)(1)(iii) and declared the requirements for satisfying that exception in cases such as *Abdul-Salaam*, *Reid*, and *Taylor*. To the extent Appellant asks this Court to adopt a different interpretation, we cannot do so, as we are bound by the decisions of our Supreme Court. *See Commonwealth v. Friday*, 90 A.2d 856, 859 (Pa. Super. 1952).

analysis,' which stated that lab tests had identified a substance seized from the defendant as cocaine, were testimonial. *Id.* at 310-11. Thus, "[a]bsent a showing that the analysts [who prepared the certificates] were unavailable to testify at trial *and* that [Melendez-Diaz] had a prior opportunity to cross-examine them, [he] was entitled to be confronted with the analysts at trial." *Id.* at 311 (emphasis in original; internal quotation marks omitted) (citing *Crawford*, 541 U.S. at 54). Second, the Court decided *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), which relied on *Melendez-Diaz* to "hold that a State could not introduce one lab analyst's written findings through the testimony of another." *Smith*, 602 U.S. at 786.

Third, the Court issued *Williams v. Illinois*, 567 U.S. 50 (2012). There,

> state police sent vaginal swabs from a rape victim known as L.J. to a private lab for DNA testing. When the lab sent back a DNA profile, a state analyst checked it against the police department's database and found that it matched the profile of prior arrestee … Williams. The State charged Williams with the rape, and he went to trial. The prosecution chose not to bring the private lab analyst to the stand. Instead, it called Sandra Lambatos, the state analyst who had searched the police database and found the DNA match. Lambatos had no first-hand knowledge of how the private lab had produced its results; she did not even know whether those results actually came from L.J.'s vaginal swabs (as opposed to some other sample). But she spoke repeatedly about comparing Williams's DNA to the DNA "found in [L.J.'s] vaginal swabs." [*Williams*, 567 U.S.] at 61, 71 … (plurality opinion); *see id.*[] at 124 … (KAGAN, J., dissenting). So in addition to describing how she discovered a match, Lambatos became the conduit for what a different analyst had reported—that a particular DNA profile came from L.J.'s vaginal swabs. Williams objected, at trial and later: He thought that, just as in *Bullcoming*, crucial evidence had been admitted

through a surrogate expert, thus violating his right of confrontation.

*Smith*, 602 U.S. at 786-87. After the Illinois Supreme Court rejected Williams's claim, the United States Supreme Court "granted Williams's petition for *certiorari*, but failed to produce a majority opinion." *Id.* at 788. Instead,

> [f]our Members of the Court approved the Illinois Supreme Court's approach to "basis evidence," and agreed that Lambatos's recitation of the private lab's findings served "the legitimate nonhearsay purpose of illuminating the expert's thought process." *Williams*, 567 U.S.[] at 78 … (plurality opinion). But the remaining five Members rejected that view. Those five stated, in two opinions, that basis evidence is generally introduced for its truth, and was so introduced at Williams's trial. Justice THOMAS explained that "the purportedly limited reason for [the basis] testimony — to aid the factfinder in evaluating the expert's opinion — necessarily entail[ed] an evaluation of whether [that] testimony [was] true": "[T]he validity of Lambatos'[s] opinion ultimately turned on the truth of [the private lab analyst's] statements." *Id.*[] at 106[] n. 1 … (opinion concurring in judgment). A dissent for another four Justices agreed: "[T]he utility of the [private analyst's] statement that Lambatos repeated logically depended on its truth." *Id.*[] at 132 (opinion of KAGAN, J.). And the State could not avoid that conclusion by "rely[ing] on [Lambatos's] status as an expert." *Id.*[] at 126…. Those shared views might have made for a happy majority, except that a different Confrontation Clause issue intruded. Justice THOMAS thought that the private lab report was not testimonial because it lacked sufficient formality, so affirmed the Illinois Supreme Court on that alternative ground. The bottom line was that Williams lost, even though five Members of this Court rejected the state court's "not for the truth" reasoning.

*Id.* (some formatting altered).

A dozen years after *Williams*, the Supreme Court issued *Smith*, attempting to correct the confusion the *Williams* decision had "sow[ed] … in courts across the country about the Confrontation Clause's application to expert opinion testimony." *Id.* at 789 (citation and quotation marks omitted).

In **Smith**, an analyst who tested drugs found in Smith's possession did not testify at trial. **Id.** at 789-90. Instead, a substitute expert with no prior connection to the case reviewed the lab reports and notes drafted by the non-testifying analyst, told the jury what those records conveyed about the analyst's testing of the items, and offered an "independent opinion" of the chemical nature of the substances. **Id.** at 791. After Smith was convicted, he appealed, arguing the State's use of a "substitute expert … violated his Confrontation Clause rights." **Id.** (internal quotation marks and citations omitted). The Arizona Court of Appeals rejected Smith's argument, concluding that "an expert may testify to the substance of a non-testifying expert's analysis, if such evidence forms the basis of the testifying expert's opinion[,]" because the "underlying facts are … used only to show the basis for the in-court witness's opinion and not to prove their truth." **Id.** at 792 (cleaned up).

However, the United States Supreme Court disagreed. The **Smith** Court instead held "[i]f an expert for the prosecution conveys an out-of-court statement in support of his opinion, and the statement supports that opinion only if true, then the statement has been offered for the truth of what it asserts." **Id.** at 795. If the out-of-court statement is also testimonial — a question not answered in **Smith** — then it is barred by the Confrontation Clause unless the declarant is unavailable and the defendant had a prior

opportunity to cross-examine them. *See id.* at 784.[2] At the close of its decision, the *Smith* Court summarized that its holding

> follows from all this Court has held about the Confrontation Clause's application to forensic evidence. A State may not introduce the testimonial out-of-court statements of a forensic analyst at trial, unless she is unavailable and the defendant has had a prior chance to cross-examine her. *See Crawford*, 541 U.S.[] at 68…; *Melendez-Diaz*, 557 U.S.[] at 311…. Neither may the State introduce those statements through a surrogate analyst who did not participate in their creation. *See Bullcoming*, 564 U.S.[] at 663…. And nothing changes if the surrogate — as in this case — presents the out-of-court statements as the basis for his expert opinion. Those statements, as we have explained, come into evidence for their truth — because only if true can they provide a reason to credit the substitute expert. So a defendant has the right to cross-examine the person who made them.

*Id.* at 802-03 (some formatting altered).

Based on the plain language of *Smith*, we conclude the Court did not recognize a new constitutional right in that decision. Instead, the Court was correcting the confusion created by *Williams* and clarifying how the Confrontation Clause principles set forth in *Crawford*, *Melendez-Diaz*, and *Bullcoming* apply when the prosecution seeks to introduce an out-of-court statement as the basis for an expert opinion. *See Commonwealth v. Douglas*, 346 A.3d 825, 836 (Pa. Super. 2025) ("In *Smith*, the Court *addressed the application* of Confrontation Clause 'principles to a case in which an expert witness restate[d] an absent lab analyst's factual assertions

---

[2] The *Smith* Court remanded for the Arizona Court of Appeals to address the issue of whether the non-testifying analyst's report was testimonial. *Id.* at 803.

to support his own opinion testimony.'") (quoting **Smith**, 602 U.S. at 783) (emphasis added).  Although Appellant asks us to find section 9545(b)(1)(iii) satisfied where a decision, such as **Smith**, simply **applies** a previously recognized constitutional right to a new factual scenario, our Supreme Court has not interpreted section 9545(b)(1)(iii) this broadly.  **See Abdul-Salaam**, **supra**; **Reid**, **supra**; **Taylor**, **supra**.  We are bound by our Supreme Court's decisions.  **See Friday**, **supra**.

Moreover, even if **Smith** did announce a new right, Appellant cannot satisfy section 9545(b)(1)(iii) because that right has not "already been held to apply retroactively."  **Taylor**, 283 A.3d at 187 (citation omitted).  Nothing in the **Smith** decision indicates the Court intended it to apply retroactively to cases pending on collateral review.  Additionally, no decision has been issued since **Smith** holding that it applies retroactively.  While Appellant presents various arguments as to why the **Smith** decision **should be** deemed to be retroactive, **see** Appellant's Brief at 18-20, the timeliness exception can only be met if **Smith** was held to be retroactive **prior to** the filing of Appellant's petition.  **See Abdul-Salaam**, 812 A.2d at 501 (stating that "the ruling on retroactivity of the new constitutional law must have been made prior to the filing of the petition for collateral review").[3]  Accordingly, Appellant has not met the retroactivity requirement of section 9545(b)(1)(iii).

_____

[3] In any event, we note that Appellant's reliance on **Johnson** would not convince us that **Smith** applies retroactively.  Not only has that case been
*(Footnote Continued Next Page)*

In sum, Appellant has not demonstrated that **Smith** recognized a new constitutional right, or that it has been held to apply retroactively to cases on collateral review. Because Appellant's petition is untimely and does not meet section 9545(b)(1)(iii), we do not have jurisdiction to review his argument that Dr. Chu's testimony was inadmissible under **Smith**.[4]

Order affirmed.

_____

abrogated by **Griffith v. Kentucky**, 479 U.S. 314 (1987), but **Johnson's** holding is also inapplicable. That decision was limited to the retroactive application of the Fourth Amendment to cases where the defendant's judgment of sentence had not yet become final. **See Johnson**, 457 U.S. at 562 (holding "a decision of this Court construing the Fourth Amendment is to be applied retroactively **to all convictions that were not yet final** at the time the decision was rendered") (emphasis added); **id.** (stating it "express[ed] no view on the retroactive application of decisions construing any constitutional provision other than the Fourth Amendment[,]" and that it was not "address[ing] the retroactive reach of our Fourth Amendment to those cases that still may raise Fourth Amendment issues on collateral attack"). Here, Appellant's case does not involve a Fourth Amendment claim, and his judgment of sentence became final years ago. Accordingly, even if **Johnson** remained good law, it would not apply.

[4] We also do not address Appellant's claims that the PCRA court erred by concluding, in an alternative analysis, that he waived his challenge to the admission of Dr. Chu's testimony, and that the admission of Dr. Chu's testimony was harmless error even if not waived. **See** Appellant's Brief at 30-37; **id.** at 37-47. **See also** PCOO at 9 (concluding Appellant's claim was waived because although he raised a Confrontation Clause challenge to Dr. Chu's testimony in his pretrial motion *in limine*, he did not raise that issue on direct appeal or in his first PCRA petition) (citing 42 Pa.C.S. § 9543(a)(3) (directing that to be eligible for relief, a petitioner must demonstrate his claim has not been previously litigated or waived)); **id.** at 9-10 (concluding the admission of Dr. Chu's testimony, even if erroneous, would be harmless error, as there was overwhelming evidence of Appellant's guilt). Because we lack jurisdiction, we reach no decision on the validity of the court's alternative analysis in these regards, and do not assess Appellant's challenges thereto.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/23/2026