J-S16019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DUAUNE-MARC SHIRA BALL | : | |
| | : | No. 1481 MDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence September 7, 2017
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0000986-2016

BEFORE:   BOWES, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY MURRAY, J.:                     **FILED APRIL 04, 2018**

Duane-Marc Shira Ball (Appellant) appeals from the judgment of sentence entered after the trial court convicted him of possession of a controlled substance, possession with the intent to manufacturer or deliver a controlled substance, and possession of drug paraphernalia.[1]  We affirm.

This case stems from a traffic stop conducted by Corporal Reed Grenci (Corporal Grenci) of the Pennsylvania State Police (PSP).  Corporal Grenci is an 18-year veteran of the PSP and is presently the Central Supervisor in the Safe Highways Initiative for Effective Law Enforcement (SHIELD) Unit.  The SHIELD Unit specializes in criminal highway interdiction in an effort to make

_____

* Retired Senior Judge assigned to the Superior Court.

[1]  35 P.S. §§ 780-113(a)(16), (30), (32).

Pennsylvania's motorways safer by enforcing the Vehicle Code and investigating suspected criminal activity.

On May 26, 2016, at approximately 1:20 p.m., Corporal Grenci stopped Appellant's vehicle along Interstate 80 in Snow Shoe Township, Centre County, based on his belief that Appellant's windows were illegally tinted. *See* 75 Pa.C.S.A. § 4524(e)(1). As Corporal Grenci approached the vehicle, he noticed that Appellant was the sole occupant, that the vehicle contained an air freshener, that there were no keys accompanying the single key in the ignition, and that there was no clutter in the vehicle. When Corporal Grenci asked Appellant his destination, Appellant stated that he was travelling to Canton, Ohio to visit his cousin.

While verifying Appellant's license, registration, and insurance information, Corporal Grenci learned that Appellant possessed a Brooklyn, New York address, that the vehicle was registered to a third party in Philadelphia, Pennsylvania,[2] and that the vehicle's insurance became active on February 10, 2016 and was to expire on May 31, 2016, just a few days later. Additionally, while Corporal Grenci verified Appellant's driver's license, he learned that Appellant's name was an alias for "Orlando Parker," whom the Federal Drug Enforcement Agency had arrested in 2009 on suspicion of marijuana trafficking. Corporal Grenci testified, "[a]t that point I got my tint

_____

[2] Appellant later identified the owner of the vehicle as his paramour.

- 2 -

meter and took the tint meter reading." N.T., 1/31/17, at 102. Corporal Grenci confirmed that the tinted windows were in violation of the Vehicle Code, but told Appellant he would receive a warning rather than a ticket. *Id.* In an effort to verify Appellant's identity, Corporal Grenci asked Appellant about "Orlando Parker" and whether Appellant had ever been arrested. Appellant initially responded by stating that he had never been arrested and that he had discovered that his name was associated with another person, but had cleared up the confusion up by visiting a "federal building." *Id.* at 27. However, Appellant subsequently admitted that he had been arrested and questioned in a marijuana trafficking investigation but claimed he was not charged with any crime.

At this point, Appellant became extremely nervous and began shaking and trembling. In addition, he was unable to recall his social security number and unable to give Corporal Grenci the name of the cousin he was on his way to visit without first pausing to think for several seconds. Corporal Grenci also noticed during the stop that Appellant made two separate cellphone calls, one of which was on speakerphone.

Based on this information, Corporal Grenci suspected that Appellant was involved in drug trafficking and asked Appellant if he could search the vehicle. When Appellant refused, Corporal Grenci contacted a canine unit to conduct a sniff search of the outside of the vehicle.

During the canine sniff search, the canine alerted the troopers to the presence of contraband in the vehicle's trunk. Corporal Grenci proceeded to manually search the vehicle's trunk and recovered approximately 50 pounds of marijuana, two cellphones, and $370.00 in cash. Appellant was arrested and charged with the aforementioned offenses.

On July 27, 2016, Appellant filed a pre-trial suppression motion in which he argued that Corporal Grenci impermissibly extended the traffic stop in the absence of reasonable suspicion that criminal activity was afoot. On August 16, 2016, Appellant also served a subpoena on Corporal Grenci that sought to compel Corporal Grenci's attendance at the hearing on Appellant's suppression motion and directed Corporal Grenci to bring with him any training or educational material that he had received related to traffic stops and drug interdiction and all reports related to drug possession arrests that he had made on a highway in the last three years. On December 14, 2016, the Office of the Attorney General filed a motion to quash Appellant's subpoena. On January 4, 2017, the trial court granted the motion to quash in part as it related to Appellant's demand that Corporal Grenci bring with him documents related to his prior drug arrests and any other educational information that he possessed.

On January 31, 2017, the trial court held a hearing on Appellant's suppression motion; it denied the motion on April 27, 2017. On June 1, 2017, the trial court conducted a stipulated bench trial, at the conclusion of which it

found Appellant guilty of all charges. On September 7, 2017, the trial court sentenced Appellant to 9 to 18 months of incarceration followed by one year of probation.

Appellant filed this timely appeal. On October 3, 2017, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On October 20, 2017, Appellant timely filed his Rule 1925(b) statement.

Appellant presents the following issues for our review:

1.    Whether the lower court denied [Appellant] the opportunity to present a complete defense and compel the attendance of witnesses in his favor when it quashed the subpoena[] issued to the Pennsylvania State Police?

2.    Whether the lower court erred by allowing Corporal [] Grenci to subvert the protections of Article I, [S]ection 8 of the Pennsylvania Constitution and the Fourth and Fourteenth Amendments to the United States Constitution when it concluded that "Indicators" established probable cause to believe that criminal activity was afoot and accordingly denied [Appellant]'s motion to suppress.

3.    Whether the lower court erred by concluding that Corporal [] Grenci did not exceed his authority during a routine traffic stop (i.e., to check documentation, ask a few brief questions, issue a citation or warning, and allow [Appellant] to continue on his way) when he engaged in aggressive questioning and otherwise held [Appellant] beyond the time necessary to complete the stop.

Appellant's Brief at 9.

First, Appellant argues that the trial court erred in quashing his subpoena that directed Corporal Grenci to bring with him to the suppression hearing any training or educational material that he had received related to

traffic stops and drug interdiction and all reports related to drug possession arrests he had made on a highway in the last three years. "Typically, the standard of review regarding a motion to quash a subpoena is whether the trial court abused its discretion." *Commonwealth v. McClure*, 172 A.3d 668, 683 (Pa. Super. 2017) (quotations and citation omitted). Where the issue raised, however, "is purely a question of law, this Court's standard of review is *de novo* and our scope of review is plenary." *Id.* (quotations and citation omitted).

The trial court concluded that the documentation Appellant sought was "investigative information" under the Pennsylvania Criminal History Record Information Act (CHRIA), 18 Pa.C.S.A. §§ 9101-9183, and that only a "criminal justice agency" could request and receive such information. Trial Court Opinion, 11/22/17, at 3-4. Section 9102 of CHRIA defines "investigative information" as, "Information assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include *modus operandi* information." 18 Pa.C.S.A. § 9102.

Section 9106(c)(4) of CHRIA restricts the dissemination of "investigative information" unless the party requesting the information is a criminal justice agency:

> Investigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a **criminal justice agency** which requests the information in connection with

- 6 -

its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa.C.S.A. § 9106(c)(4) (emphasis added).

CHRIA defines a criminal justice agency as:

Any court, including the minor judiciary, with criminal jurisdiction or any other governmental agency, or subunit thereof, created by statute or by the State or Federal constitutions, specifically authorized to perform as its principal function the administration of criminal justice, and which allocates a substantial portion of its annual budget to such function. Criminal justice agencies include, but are not limited to: organized State and municipal police departments, local detention facilities, county, regional and State correctional facilities, probation agencies, district or prosecuting attorneys, parole boards, pardon boards, the facilities and administrative offices of the Department of Public Welfare that provide care, guidance and control to adjudicated delinquents, and such agencies or subunits thereof, as are declared by the Attorney General to be criminal justice agencies as determined by a review of applicable statutes and the State and Federal Constitutions or both.

18 Pa.C.S.A. § 9102 (footnote omitted).

Appellant argues that his subpoena "did not compel the State Police to provide the documents to counsel or [Appellant]," but instead directed Corporal Grenci to bring them to the Court of Common Pleas of Centre County, a criminal agency under Section 9102. Appellant's Brief at 23. Upon review, we conclude that the trial court did not err in quashing Appellant's subpoena.

This court has held "that records of the PSP relating to a criminal investigation of an accused who wished to inspect these records could not be disclosed through the testimony of a subordinate PSP officer at trial." *Commonwealth v. McElroy*, 665 A.2d 813, 818 (Pa. Super. 1995) (citing

*Commonwealth v. Friday*, 90 A.2d 856, 860 (Pa. Super. 1952)). "The proper mode of procedure" for requesting such records is "the service of a subpoena *duces tecum* upon the Commissioner of the PSP as the legal custodian of records[.]" *Id.* We explained that the Commissioner of the PSP is "the legal custodian of the records" and consequently, a criminal defendant may only "obtain evidence [that] s/he deems material and [that] cannot be obtained through other avenues by service of a subpoena *duces tecum* upon the custodian of the record or other evidence sought." *Id.*

In this case, Appellant concedes that he served his subpoena on Corporal Grenci, a supervisor in the SHIELD unit of the PSP, not the Commissioner of the PSP. Appellant's Brief at 23. Corporal Grenci is, without question, subordinate to the Commissioner. Thus, Appellant improperly issued the subpoena. Although counsel for Appellant has claimed, both before the trial court and in his appellate brief to this Court, that he either had or was going to take the necessary measures to cure this procedural defect, there is no evidence in the certified record that such measures occurred. Accordingly, we conclude that the trial court did not err in quashing Appellant's subpoena.[3]

---

[3] The trial court quashed Appellant's subpoena on substantive grounds, concluding that the documentation Appellant sought was "investigative information" and that only a "criminal justice agency," not Appellant, could request and receive such information. Trial Court Opinion, 11/22/17, at 3-4. Although our reasoning differs from that of the trial court, it is well settled that an appellate court can affirm on any basis. *In re Jacobs*, 15 A.3d 509, n.1 (Pa. Super. 2011) ("[This Court is] not bound by the rationale of the trial court, and may affirm on any basis.").

Next, we address Appellant's second and third issues together because they challenge the trial court's denial of his suppression motion. Specifically, Appellant argues that Corporal Grenci did not possess the reasonable suspicion necessary to detain him for the purpose of conducting a canine sniff. Appellant asserts that the facts relied upon by the trial court in concluding that Corporal Grenci had reasonable suspicion to conduct a canine search of Appellant's vehicle were wholly innocent, "innocuous," and provided Corporal Grenci with "nothing more than a hunch that [Appellant] was involved in criminal activity." Appellant's Brief at 25.

The standard of review for the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted). Our review is limited to the suppression hearing record. ***In re L.J.****,*

- 9 -

79 A.3d 1073, 1085 (Pa. 2013). "[I]t is the sole province of the suppression court to weigh the credibility of witnesses," and "the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Blasioli*, 685 A.2d 151, 157 (Pa. Super. 1996) (quotation and citation omitted), *affirmed*, 713 A.2d 1117 (Pa. 1998).

Instantly, Appellant does not dispute the legality of the initial traffic stop based on the dark tint of the vehicle's windows. Instead, Appellant contends that Corporal Grenci impermissibly extended the traffic stop and improperly conducted a canine sniff of the vehicle because he lacked reasonable suspicion of criminal activity beyond the initial reason for the stop – in this case the illegally tinted windows.

During a traffic stop, an officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). "[I]f there is a legitimate stop for a traffic violation … additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions." *Commonwealth v. Chase*, 960 A.2d 108, 115 n.5 (Pa. 2008). This Court has held that such investigations, including a canine sniff of the exterior of a vehicle, must be supported by reasonable suspicion. *Commonwealth v. Harris*, 176 A.3d 1009, 1021 (Pa. Super. 2017) ("[C]onsidering the relatively minor privacy interest in the exterior of the

vehicle and the minimal intrusion occasioned by a canine sniff, ...mere reasonable suspicion, rather than probable cause, [is] required prior to [a dog] sniffing the exterior of [a] vehicle.").

Our Supreme Court has explained:

A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. **Commonwealth v. Cook**, [] 735 A.2d 673, 676 ([Pa.] 1999). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." **Id.** In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. **In re D.M.**, [] 781 A.2d 1161, 1163 ([Pa.] 2001). In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." **Cook**, 735 A.2d at 676 (quoting **Terry v. Ohio**, 392 U.S. 1, 27 [] (1968)). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." [**Id.**]

**Commonwealth v. Rogers**, 849 A.2d 1185, 1189 (Pa. 2004).

We conclude that Corporal Grenci possessed reasonable suspicion to detain Appellant and request a canine sniff of the vehicle. Corporal Grenci, who had extensive training and experience in drug interdiction as a member of the PSP's SHIELD Unit, testified that he stopped Appellant along Interstate 80, which is widely known as a major drug trafficking corridor in the United States. N.T., 1/31/17, at 10. He explained that he immediately observed in the car an air freshener, two cans of Red Bull, a single key in the ignition unaccompanied by house keys, and a clean interior of the vehicle with no

- 11 -

visible luggage or clutter beyond a sweatshirt in the backseat. *Id.* at 17. Corporal Grenci stated that based on his experience, drug traffickers often use air fresheners to mask the smell of controlled substances, and energy drinks for long trips with immediate turnarounds. *Id.* at 18. Corporal Grenci testified that the single key in the ignition also indicated that the vehicle was owned by a third party and that, in his experience, drug traffickers commonly use third-party vehicles so that the driver can claim that he did not know the vehicle contained drugs. *Id.* at 17-18.

When Corporal Grenci verified Appellant's license, registration and insurance information, he discovered that Appellant resided in Brooklyn, New York, that the car was registered to a third-party in Philadelphia, Pennsylvania, and that the car's insurance became active on February 10, 2016 and was set to expire on May 31, 2016, just a few days later. *Id.* at 13-18. Corporal Grenci testified that based on his experience, drug traffickers often use vehicles with registrations or insurance that are only active for a short period of time because it makes it more difficult for the police to track and conduct surveillance on the vehicles. *Id.* at 16-18.

As Corporal Grenci was in the process of verifying Appellant's license in his computer, he learned that Appellant's name was an alias for another identity, "Orlando Parker," whom the Federal Drug Enforcement Agency had arrested in 2009 for marijuana trafficking. *Id.* at 24-25. At this point, Corporal Grenci was unable to verify Appellant's actual identity. *Id.* at 25-26.

Consequently, Corporal Grenci questioned Appellant about the name "Orlando Parker" and whether Appellant had ever been arrested. *Id.* at 26-27. While Appellant initially claimed that he had never been arrested, he eventually admitted to Corporal Grenci that he had been arrested and questioned in connection with a marijuana trafficking ring. *Id.* at 27-28, 32-33. Corporal Grenci testified that based on his experience, Appellant's behavior was consistent with a person engaged in criminal activity. *Id.* at 32.

From this moment forward, Corporal Grenci indicated that Appellant became extremely nervous to the point that he was shaking and trembling and was unable to properly recount his social security number and had to pause several seconds before answering when Corporal Grenci asked him for the name of the cousin he was planning to visit. *Id.* at 28-33. Corporal Grenci reiterated that Appellant's demeanor, based on Corporal Grenci's training and experience, was suspicious for criminal activity. *Id.* at 33.

Further, Corporal Grenci testified Appellant was talking on his cellphone on two different occasions during the traffic stop, with one of the calls being on speakerphone. *Id.* at 37-38. Although he did not hear what was discussed during those phone conversations, Corporal Grenci testified that in his experience, drug traffickers will make calls during a traffic stop to inform their suppliers or trail cars that they have been stopped. *Id.*

Corporal Grenci testified that based on the totality of this information, he believed that Appellant was trafficking drugs and therefore asked for

Appellant's consent to search the vehicle. *Id.* at 34. When Appellant declined,

Corporal Grenci called the canine unit. *Id.* at 35.

> The trial court credited Corporal Grenci's testimony and concluded:
>
> While no single factor would necessarily suffice to establish reasonable suspicion, viewing Corporal Grenci's testimony in its totality supplies a valid basis upon which he could extend the traffic stop to continue his investigation. The [c]ourt finds the totality of the circumstances supported Corporal Grenci's reasonable suspicion that criminal activity was afoot and thus permitted him to investigate his suspicion by requesting a canine unit to conduct a sniff search of the exterior of [Appellant]'s vehicle.

Trial Court Opinion, 4/27/17, at 6. After careful consideration, we agree.

We are aware that, when viewed on their own, several of the indicators upon which Corporal Grenci relied appear innocuous. For example, we would not conclude that a police officer could detain a vehicle on suspicion for drug trafficking and subject it to a canine sniff merely because the vehicle contained an air freshener or energy drinks, because it was free from clutter, or because the officer stopped the vehicle along Interstate 80. We are, however, required to view the totality of the circumstances. *Rogers*, 849 A.2d at 1189. In doing so, considering these indicators along with other factors including that this stop involved a vehicle owned by a third party with insurance set to expire only a few days after the stop, Appellant's prior arrest for marijuana trafficking, and his escalating nervousness when Corporal Grenci questioned him about that arrest, lead us to conclude that the record supports the trial

- 14 -

court's determination that Corporal Grenci's detention of Appellant was supported by reasonable suspicion. Recent case law supports our conclusion.

This Court, in **Commonwealth v. Freeman**, 150 A.3d 32 (Pa. Super. 2016), **appeal denied**, 169 A.3d 524 (Pa. 2017), held that an investigative detention and canine sniff search of a vehicle was supported by reasonable suspicion under circumstances factually similar to this case. In **Freeman**, a Pennsylvania State Trooper stopped a vehicle along Interstate 80 for an unsafe lane change and following another vehicle too closely. **Id.** at 33. During the stop, the trooper observed air fresheners, that the vehicle was a single-day rental, that the defendant was verbally inconsistent as to where he was traveling and why he was traveling to that location, that defendant was acting nervous and "somewhat shaky," and that the defendant had been arrested previously for a gun crime. **Id.** at 37.

Based on these observations, this Court affirmed the trial court's determination that the state trooper possessed the reasonable suspicion necessary to detain the vehicle and request a canine sniff search. **Id.** at 40-41. We explained:

> We recognize that, when viewed in isolation, many of the facts on which the troopers relied appear innocuous. We would hesitate to hold that a vehicle may be detained for more than an hour and subjected to a canine search merely because it had been rented for a one-way trip from New York to Binghamton, a purported drug destination, or because the driver, when stopped, appeared agitated. But we are required to review the circumstances in their totality, and, upon doing so, we conclude that the evidence was sufficient to support the trial court's determination that the

- 15 -

troopers' detention of Appellant was supported by reasonable suspicion.

*Id.* at 41.

Here, as with **Freeman**, Corporal Grenci stopped Appellant along Interstate 80 and observed that Appellant's vehicle was registered to a third party, was exceptionally clean and contained an air freshener, that Appellant had an arrest history, and became progressively more nervous during the encounter. Additionally, with respect to Appellant's prior arrest for marijuana trafficking, Corporal Grenci had even greater reason to believe that Appellant was involved in drug activity than the trooper in **Freeman**, given that (1) the defendant in **Freeman** only had a prior arrest for a gun violation while Appellant was previously arrested for a drug crime, and (2) Appellant lied about his prior arrest. **See id.** at 33.

Accordingly, we conclude that the trial court did not err in determining that the totality of the circumstances in this case supported Corporal Grenci's suspicion that Appellant was engaged in criminal activity. While this may be a close case, we discern no basis upon which to reverse the trial court's denial of Appellant's suppression motion.

Appellant contends that this case is analogous to this Court's decision in **Commonwealth v. Dales**, 820 A.2d 807 (Pa. Super. 2003). In **Dales**, a police officer stopped a vehicle for excessive window tinting. *Id.* at 809. During that stop, the officer observed several air fresheners in the vehicle and detected a smell that "he described as medicine, something like Bactine." *Id.*

at 810. The officer also noted that the defendant appeared nervous when answering his questions. *Id.*

After the officer verified the defendant's license, registration, and insurance – without issue – he gave the defendant a written warning for the tinted windows and explained to him the appropriate amount of tinting on a vehicle's windows. *Id.* The officer then began asking the defendant questions about where he was travelling and who he was visiting. *Id.* at 811. Noticing inconsistencies in the defendant's answers, the officer asked the defendant if there was anything illegal in the vehicle. *Id.* The driver responded in the negative and consented to a search of the vehicle. *Id.* Upon searching the vehicle, the officer discovered approximately one pound of crack cocaine in the trunk. *Id.*

The trial court granted the defendant's motion to suppress the crack cocaine discovered by the officer and this Court affirmed. *Id.* at 811, 815. We explained:

> Initially, we note that the reason for the initial traffic stop was the excessive tinting on Defendant's vehicle's windows. When Officer Clee approached Defendant and requested his license, registration, and proof of insurance, Defendant complied and gave Officer Clee the requested documents. Officer Clee then returned to his police car, radioed the information in, and established that everything was in order. He then wrote up a warning slip advising Defendant of the excessive tinting and returned to Defendant's vehicle. Officer Clee then instructed Defendant to accompany him back to the police vehicle so that he could instruct Defendant on the proper amount of tinting, as demonstrated by the tinting of the police vehicle's windows. Defendant complied and followed Officer Clee to the police vehicle, where Officer Clee took approximately 20-30 seconds to point out the permissible amount

of tinting. Following this exchange, Officer Clee returned Defendant's various documents to him along with the warning regarding the excessive tint. We conclude that the purpose of the initial traffic stop ended at this point.

Nonetheless, Officer Clee continued with a "second ... round of questioning." … [W]e conclude that this second round of questioning constituted an investigative detention, and that Officer Clee lacked the reasonable suspicion necessary to support it. …

\*     \*     \*

[A]t the point in time that the second round of questioning began, Officer Clee had only observed the following facts: (1) there was a smell of bactine emanating from Defendant's vehicle; (2) there were several air fresheners in the vehicle; and (3) Defendant appeared nervous.

We conclude that these facts were insufficient to establish anything more than a hunch of possible criminal activity being afoot. Thus, we find that Officer Clee lacked the reasonable suspicion necessary to conduct the second round of questioning, and consequently, the continued investigative detention was illegal.

*Id.* at 814-815.

*Dales* stands for the proposition that where a police officer seeks to detain a vehicle beyond the initial purpose of a traffic stop, the officer must have reasonable suspicion that the defendant is engaged in criminal activity. Appellant's case is distinguishable from *Dales*. Corporal Grenci observed several factors which together coalesced and caused him to believe Appellant was engaged in drug trafficking (*e.g.*, the stop occurred on Interstate 80, the air freshener, the two cans of Red Bull, a third party owned the vehicle, the insurance of the vehicle was set to expire in a few days and was only active for a short period of time, and Appellant's arrest for marijuana trafficking).

Corporal Grenci learned of each of these indicators before completing verification of Appellant's identity. Further, because of the confusion surrounding "Orlando Parker," Corporal Grenci questioned Appellant about his identity, at which time Appellant initially lied about his past arrest and became increasingly nervous. All of this occurred before Corporal Grenci had a chance to issue a citation for the excessively tinted windows of the vehicle. Unlike the police officer in *Dales*, Corporal Grenci never established that "everything was in order." *Id.*

After careful review, and for the above reasons, we conclude that the trial court did not err in determining that the investigative detention was supported by reasonable suspicion. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2018