J-S14041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH ANTHONY ROSARIO | : | |
| | : | |
| Appellant | : | No. 931 WDA 2022 |

Appeal from the Judgment of Sentence Entered March 25, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0002611-2017

BEFORE: PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: JUNE 21, 2023**

Keith Anthony Rosario (Rosario) appeals from the March 25, 2022 judgment of sentence imposed by the Court of Common Pleas of Washington County (trial court) following this Court's remand for resentencing on his convictions for attempted homicide, two counts of aggravated assault, two counts of kidnapping and conspiracy to commit homicide, aggravated assault and kidnapping.[1] The trial court resentenced him to an aggregate of 25 to 50 years' imprisonment followed by one year of re-entry supervision, a reduction from his original sentence of 35.5 to 90 years' imprisonment. Rosario

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901, 2501, 2702, 2901 & 903.

challenges the discretionary aspects and legality of his sentence. We reverse and remand for resentencing.

## I.

We recounted the factual and procedural history of this matter in detail in Rosario's direct appeal. *See Commonwealth v. Rosario*, 248 A.3d 599, 604-07, 612 (Pa. Super. 2021). Briefly, in September 2017, Rosario and two other individuals assaulted the victim, Marcus Stancik, as he was walking in an alley. They threw him into their van and drove him to a different location, where Rosario removed him from the vehicle and shot him at the base of his skull near his neck. He attempted to fire a second shot, but his gun jammed, preventing him from doing so. Stancik survived the gunshot wound and identified Rosario as one of his assailants to law enforcement.

Following a jury trial, Rosario was convicted of the above-mentioned offenses. On appeal, he argued in relevant part that his sentences for attempted homicide and conspiracy to commit aggravated assault were illegal, as the Sentencing Code prohibits multiple convictions for inchoate crimes "designed to commit or to culminate in the commission of the same crime." *Id.* at 616-19 (citing 18 Pa.C.S. § 906) (emphasis omitted). He additionally argued that his sentences for two counts of kidnapping under 18 Pa.C.S. § 2901(a)(2) and (3) violated double jeopardy principles because they arose from the same criminal act. *Id.* at 619. We agreed and vacated the sentences for conspiracy and kidnapping. *Id.* at 619, 621 (citing *Commonwealth v.*

- 2 -

*Lopez*, 663 A.2d 746 (Pa. Super. 1995)). Because our disposition upset the trial court's sentencing scheme, we remanded the matter for resentencing.

At the resentencing hearing, the parties stipulated to the entry of the presentence investigation report (PSI) prepared prior to Rosario's initial sentencing hearing in 2019. The report included details of Rosario's prior convictions, his family background and educational and employment history, character statements provided by family members and a victim impact statement. The trial court also considered excerpts of the transcript of the original sentencing hearing of statements by Rosario's mother and sister.

Rosario read a prepared statement on his behalf. While not admitting guilt, he expressed remorse to the individuals affected by the crime, particularly his own children. He regretted that his children would grow up without a father and said that he was working to be a productive member of society. He was employed as a janitor in state prison and was waiting to begin a barber shop training program. He was teaching himself Italian, learning about the law and writing a book. He said that he turned down a favorable plea deal for 11 to 22 years of incarceration and believed he was penalized for going to trial when he was sentenced to 35.5 to 90 years of incarceration. He said that he had no violent history in prison and was currently classified as a minimum security risk. He completed classes such as thinking for a change, violence prevention and batterers' intervention and was on the waiting list for additional classes such as money smart, seeking out safety, flaggers and

building and planning. He believed that he was capable of rehabilitation and successfully reentering society.

After receiving this evidence, the trial court resentenced Rosario to an aggregate of 25 to 50 years of incarceration followed by one ear of reentry supervision. For ease of reference, the previous and current sentencing schemes are as follows:

| Charge | June 3, 2019 Sentence | March 25, 2022 Sentence |
|---|---|---|
| Attempted homicide | 120 to 240 months | 120 to 240 months |
| Aggravated assault, (a)(1) | Merged | Merged |
| Aggravated assault with a deadly weapon, (a)(4) | 36 to 120 months, consecutive | 60 to 120 months, consecutive |
| Kidnapping, (a)(2) | 90 to 240 months, consecutive | 120 to 240 months, consecutive |
| Kidnapping, (a)(3) | 90 to 240 months, consecutive | Merged |
| Conspiracy | 90 to 240 months, consecutive | Merged |
| **Aggregate** | 35.5 to 90 years | 25 to 50 years |

In resentencing Rosario to the statutory maximum on three of the counts, the trial court explained that it found several aggravating factors necessitating the sentence. First, Rosario had been paroled for a different firearms offense approximately four months prior to the instant offenses and he had also been on probation at the time for two prior drug offenses. The trial court considered Rosario's supervised release at the time of his crimes to be a separate aggravating factor from his prior record score and found that

prior attempts at rehabilitating him had failed. Second, Rosario had involved a juvenile with whom he had a bond "much like father and son" in the crimes. N.T., 3/25/22, at 28. Third, the trial court stated that Rosario lacked remorse and had failed to take responsibility for his actions. He did not specifically express remorse to the victim during his allocution and had denied his guilt. Finally, the trial court found that the crime had a profound effect on the victim, who suffered medical issues stemming from the attack and still had the bullet lodged in his face at the time of trial. Based on those reasons, it concluded that the statutory maximum sentences were appropriate. Notably, its reasoning for imposing the sentences following remand were materially identical to the reasoning it provided in support of the original sentence. *Compare* N.T., 6/3/19, at 29-31, *with* N.T., 3/25/22, at 27-29.

Rosario timely filed a post-sentence motion, which the trial court denied after argument. He timely appealed and he and the trial court have complied with Pa. R.A.P. 1925.

**II.**

We begin with Rosario's challenges to the discretionary aspects of his sentence.[2] He contends that the trial court abused its discretion because his

---

[2] Our standard of review is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse

*(Footnote Continued Next Page)*

sentences for aggravated assault with a deadly weapon and kidnapping exceeded the aggravated range of the sentencing guidelines and were unreasonable. He further contends that these sentences were excessive and that the trial court imposed maximum sentences without considering mitigating circumstances or his individual character.

**A.**

Before considering the merits of Rosario's claim, we must consider whether he has properly invoked this Court's jurisdiction. *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). A defendant must preserve his claims at the time of sentencing or in a post-sentence motion, file a timely notice of appeal, and include a statement of reasons for allowance of appeal pursuant to Pa. R.A.P. 2119(f) in his brief and raise a substantial question for review. *Id*. Rosario has complied with the first three requirements. Accordingly, we proceed to consider whether he has raised a substantial question.

---

of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Wallace*, 244 A.3d 1261, 1278–79 (Pa. Super. 2021) (citation omitted).

- 6 -

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Clarke*, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted). We have previously held that a defendant presents a substantial question when he alleges that the trial court exceeded the aggravated range of the sentencing guidelines without justification. *See Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008). Moreover, a defendant presents a substantial question when he or she alleges that the court imposed an aggravated range sentence without considering mitigating circumstances. *See Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012) (citation omitted); *Commonwealth v. Dodge*, 77 A.3d 1263, 1270-71 (Pa. Super. 2013) (finding a substantial question for our review when a defendant alleged that the court imposed a manifestly excessive sentence without considering mitigating evidence). Rosario has alleged both of these abuses of discretion in his 2119(f) statement.[3] As a result, we find that he has raised a substantial question and proceed to the merits of his claim.

_____

[3] These claims are not mere challenges to the consecutive nature of the sentences, as argued by the Commonwealth. *See* Commonwealth's Brief at 9-10.

**B.**

When imposing a sentence, a trial court must ensure that the sentence is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due consideration by the court of the statutory considerations [enunciated in that section]." **Commonwealth v. Coulverson**, 34 A.3d 135, 145 (Pa. Super. 2011) (citations omitted). A sentencing court is not required to impose the "minimum possible confinement," but rather must craft an individualized sentence after considering "the particular circumstances of the offense and the character of the defendant." **Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010) (citations omitted).

When the court imposes a sentence outside of the sentencing guidelines, it is required to provide a statement of reasons for the deviation.[4] **Commonwealth v. Walls**, 926 A.2d 957, 963 (Pa. 2007). While the guidelines are advisory and not binding on the sentencing court, it must

---

[4] This requirement can be satisfied by placing the statement of reasons on the record in open court and in the defendant's presence. **See Commonwealth v. Bowen**, 55 A.3d 1254, 1263-64 (Pa. Super. 2012).

nevertheless consider the guidelines as one factor in sentencing and provide a reasoned justification for departing from them when it chooses to do so. *Id.* at 964; *Commonwealth v. Sessoms*, 532 A.2d 775, 781 (Pa. Super. 1987) ("The guidelines must be 'considered' and, to ensure that such consideration is more than mere fluff, the court must explain its reasons for departure from them."). Moreover,

> the inherent seriousness of the offense is taken into consideration in the guideline recommendations. If the sentencing court imposes a sentence that deviates significantly from the guideline recommendations, it must demonstrate that the case under consideration is compellingly different from the "typical" case of the same offense or point to other sentencing factors that are germane to the case before the court. These factors include the character of the defendant or the defendant's criminal history.

*Commonwealth v. Robertson*, 874 A.2d 1200, 1213 (Pa. Super. 2005) (citations omitted). "Where the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa. Super. 2019) (internal quotations & citation omitted).

Pursuant to 42 Pa.C.S. § 9781(c)(3), when the sentencing court has imposed a sentence outside the guidelines, we must vacate and remand if "the sentence is unreasonable," otherwise, we must affirm. In *Walls*, our Supreme Court noted that reasonableness is not defined in the statute and "commonly connotes a decision that is 'irrational' or 'not guided by sound

judgment.'" ***Walls***, ***supra***, at 963.  Reasonableness is assessed in two distinct

ways.  First, 42 Pa.C.S. § 9781(d) states that we shall consider the following:

>  (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

>  (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

>  (3) The findings upon which the sentence was based.

>  (4) The guidelines promulgated by the commission.

***Id***.  "A sentence may be found unreasonable if it fails to properly account for

these four statutory factors . . . [or] if the sentence was imposed without

express or implicit consideration by the sentencing court of the general

standards applicable to sentencing."  ***Commonwealth v. Durazo***, 210 A.3d

316, 321 (Pa. Super. 2019) (citation omitted, bracketing in original).

Here, Rosario challenges his sentences for aggravated assault with a

deadly weapon and kidnapping.  Based on his prior record score (PRS) of four

and the offense gravity score (OGS) of eight, the standard range of the

guidelines for aggravated assault with a deadly weapon was a minimum of 21

to 27 months' incarceration, with an aggravated range of 36 months'

incarceration.  Rosario was sentenced to the statutory maximum of 60 to 120

months' incarceration on that count.  Kidnapping carried an OGS of ten,

resulting in a standard range of a minimum of 48 to 60 months' incarceration,

with an aggravated range of 72 months' incarceration.[5] Rosario was sentenced to the statutory maximum of 120 to 240 months' incarceration on that count. Accordingly, his sentences on these two counts were above the aggravated range of the guidelines and we must assess whether they were "reasonable." 42 Pa.C.S. § 9781(c)(3).

## C.

Preliminarily, the Commonwealth contends that this Court is bound by the law of the case established in Rosario's prior appeal when determining whether his new sentence is reasonable. In assessing the discretionary aspects of his prior sentence, we explained:

> We also agree the imposition of consecutive sentences did not result in an "excessive aggregate sentence." [Rosario], while on supervised release, kidnapped Stancik, beat him both with his fists and with the gun, threatened him, and forced him to a remote area. He dragged him from the car, shot him execution-style in the back of his head, and when the first shot was not fatal, attempted a second shot, failing only because the gun jammed. We find the aggregate sentence of 35½ to 90 years is not grossly disparate to [Rosario's] conduct and does not "viscerally appear as patently 'unreasonable.'" **Commonwealth v. Gonzalez–DeJesus**, 994 A.2d 595, 599 (Pa. Super. 2010).

**Rosario**, **supra**, at 614-15. The Commonwealth argues that because we concluded that a 35.5 to 90 year sentence was not unreasonable, we are

---

[5] Though the trial court applied the deadly weapon used enhancement to this count at Rosario's initial sentencing, it declined to do so on resentencing. **See** N.T., 3/25/22, at 23-24.

- 11 -

bound by that assessment in evaluating Rosario's reduced 25 to 50 year sentence.

"The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." **Commonwealth v. McCandless**, 880 A.2d 1262, 1267 (Pa. Super. 2005) (*en banc*) (citation omitted). The doctrine serves judicial economy, protects the expectations of the parties, ensures consistency and uniformity, streamlines cases and ensures that litigation can be brought to an end. **Id.** However, as a rule intended to promote public policy concerns, it is not absolute. "Hence, the law of the case doctrine might not apply under exceptional circumstances, including: an intervening change in the law, a substantial change in the facts, or if the prior ruling was 'clearly erroneous' and 'would create a manifest injustice if followed.'" **Id.** at 1268 (citation omitted).

When this Court upsets a trial court's sentencing scheme, we remand for resentencing and the original sentence is rendered a legal nullity. **Commonwealth v. Ali**, 197 A.3d 742, 759 (Pa. Super. 2018). Thus, on resentencing, a trial court must "start 'afresh' and re-evaluate the sentencing factors." **Id.** This reassessment includes consideration of any evidence that was not available at the previous sentencing hearing, including evidence of the defendant's conduct or performance on supervision in the intervening

- 12 -

time. **Commonwealth v. Jones**, 640 A.2d 914, 919-20 (Pa. Super. 1994). Accordingly, on remand for resentencing, a trial court is not limited by and should not solely consider the record of the original sentencing hearing. Instead, it must consider all relevant factors outlined in the Sentencing Code in light of the defendant's background and the circumstances of the offense in order to craft an appropriate sentence. **See Commonwealth v. Luketic**, 162 A.3d 1149, 1160-61 (Pa. Super. 2017); **Commonwealth v. Finnecy**, 135 A.3d 1028, 1032 (Pa. Super. 2016). As discussed in Part II.B, *supra*, the trial court is not bound on remand by its prior sentencing decisions, but rather must reconsider all of the sentencing factors in light of the newly-developed record and adequately articulate the reasoning behind the sentence it chooses to impose.

The fact-specific nature of this inquiry undermines the Commonwealth's argument that our review of the discretionary aspects of a sentence is bound by the law of the case that derived from an earlier sentencing hearing. On remand for resentencing, the trial court must start afresh in its evaluation of the sentencing factors, **see Jones**, **supra**, and our review of the trial court's exercise of discretion is based on that fresh record, **see Wallace**, **supra**. Simply put, what is "reasonable" on one sentencing record may not be

reasonable on a subsequent one.[6]  Accordingly, we conclude that the law of the case does not require this Court to adhere to a prior panel's assessment of Rosario's sentence based on a different sentencing hearing.  *See also Pepper v. U.S.*, 562 U.S. 476, 506-07 (2011) (holding that the law of the case doctrine does not bind subsequent sentencing court when case is remanded for a *de novo* sentencing hearing).

**D.**

Rosario's challenges to the discretionary aspects of his sentence are related and we address them together.  First, he contends that his sentences for aggravated assault with a deadly weapon and kidnapping were unreasonable because no new information was adduced at the resentencing hearing to justify the increase above the aggravated range of the guidelines. He identifies two changes that occurred between the two sentencing hearings: the trial court did not apply the deadly weapon enhancement to the kidnapping charge, and Rosario presented new information regarding his time in

---

[6] Additionally, Rosario was previously sentenced within the aggravated range of the sentencing guidelines on the relevant counts, so we reviewed his sentence to determine whether it was "clearly unreasonable."  42 Pa.C.S. § 9781(c)(2).  The aggravated range for kidnapping was based on the application of the deadly weapon enhancement, which the trial court did not apply on resentencing.  In the instant appeal, Rosario was sentenced outside the guidelines entirely and we review to determine whether the sentence was "unreasonable."  42 Pa.C.S. § 9781(c)(3).  Because we must apply a different legal standard to review the instant sentence, in addition to a different factual record, the law of the case doctrine does not bind our analysis.

incarceration through his allocution. Without more, he contends that the increase from the aggravated range to outside the guidelines entirely was unreasonable. Second, he argues that the trial court failed to consider any mitigating circumstances and based his statutory maximum sentences purely on the nature of the crimes. He acknowledges that the trial court reviewed a PSI, victim impact statement and character statements from Rosario's family members, but argues that the trial court did not consider his efforts at rehabilitation during his incarceration.

The record reveals that the trial court considered the PSI that was prepared prior to Rosario's first sentencing hearing, along with written character statements that had been provided at that time and testimony from Rosario's family members. While Stancik did not appear at resentencing, he provided a victim impact statement. Finally, Rosario exercised his right to allocution to express remorse to his family and explain the steps he had taken toward rehabilitation. After receiving this evidence, the trial court provided the following reasoning for its aggregate 25 to 50-year sentence:

> The Court notes that it has sentenced the Defendant to the statutory maximum allowed by law. The Court has considered the Pennsylvania sentencing guidelines but notes that the guidelines are advisory only. The Court does not believe that a guideline sentence is appropriate, given the facts and circumstances of this particular case. There are several aggravating factors the Court has considered in imposing sentence outside the sentencing guideline recommendations.
>
> First and foremost, at the time of this offense, Defendant was on parole for a firearms violation. He had been paroled less than four months at the time of this—prior to this incident and was under

the supervision of the Pennsylvania Board of Probation and Parole at the time he committed this offense. He was also subject to a consecutive probationary sentence on two prior drug offenses.

While the guidelines include the prior record conviction score, they do not take into account that the Defendant was on supervised release at the time of the new charges.

It is abundantly clear to me that the Court—that prior attempts to rehabilitate the Defendant have failed. It is also noteworthy that the Defendant was on parole for a prior firearms offense when he committed this offense with a firearm.

Further, the Court is troubled by Defendant involving a juvenile, Tyree King, in the criminal episode. Both the Defendant and Mr. King testified at the jury trial that the two of them had a special bond much like father and son. Yet Defendant exposed him to the violent assault on Mr. Stancik, and even encouraged him to remain silent after the commission of the assault.

The Court also considers Defendant's lack of remorse and his failure to accept any responsibility for his actions as an aggravating factor. From the outset and to this day, Defendant has not accepted any responsibility or expressed a scintilla of remorse toward the victim. His only mention of the word remorse in his allocution today was remorse toward his children. Further, he stated at the start of his allocution that it was, "[n]ot an admission of guilt."

Finally, the Court considers the profound impact this assault had on the victim, Marcus Stancik. At the jury trial, the Court had the benefit of hearing extensive medical testimony from the treating emergency room physician. He explained the injuries which resulted from Mr. Stancik being shot in the back of his head and even provided X-rays showing the bullet lodged in his skull.

The Court also heard directly from the victim, Mr. Stancik, the horrifying account of his abduction and assault. His trial testimony demonstrated the extreme mental and physical cruelty inflicted on him by the Defendant. It's truly a miracle that Mr. Stancik survived being shot in the back of his head at close range and that he lived to tell us about it.

> Although Mr. Stancik somehow survived this attempted execution, the bullet remains lodged in his face, a lasting reminder of the atrocities that were committed on September 5, 2017.
>
> For all of these reasons, the Court finds that a guideline sentence would be inappropriate in this case and that the statutory maximum sentence is not only warranted, but it is necessary, as Defendant clearly poses a grave danger to society.

N.T., 3/25/22, at 27-29. As noted *supra*, this reasoning mirrored—and is in fact, almost verbatim—the reasoning the trial court provided for the sentence it imposed initially in 2019. **Compare** N.T., 6/3/19, at 29-31, **with id**. However, in 2019, the trial court sentenced Rosario within the aggravated range of the guidelines for the counts of aggravated assault with a deadly weapon and kidnapping.

We conclude that the trial court abused its discretion in imposing sentences that were substantially outside of the aggravated range of the guidelines on these two counts. The statutory maximum sentences and the trial court's rationale in support were unreasonable in several respects under Section 9781(d). As Rosario argues, the only new information the trial court had before it in resentencing was Rosario's allocution, which did not support an increase in the sentences compared to his initial sentencing in 2019.

The first two factors under Section 9781(d), "[t]he nature and circumstances of the offense and the history and characteristics of the defendant" and "[t]he opportunity of the sentencing court to observe the defendant, including any presentence investigation," are related. 42 Pa.C.S. § 9781(d)(1)-(2). Here, the trial court relied on the presentence investigation

that was prepared prior to Rosario's initial sentencing in 2019 and Rosario offered supplementary information through his allocution. He explained that he was employed as a janitor and was waiting to begin cosmetology school. He was considered a minimum security risk in prison and did not have any history of violence while incarcerated. He had completed numerous classes that were recommended by prison officials, including classes in violence prevention and batterers' intervention, and was on the waiting list for additional optional classes focused on career and life skills. He expressed remorse to his family and a desire to become a productive member of society upon release. His statement represented a marked departure from the statements he provided in 2019 in his original PSI, which focused on asserting his innocence and downplaying any prior incidents of violence.

While we do not discount the trial court's opportunity to observe Rosario at both sentencing proceedings, the reasoning it placed on the record at resentencing evidenced a singular focus on Rosario's statement of remorse and the circumstances of the offenses to the exclusion of any mitigating evidence. The trial court was entitled to consider Rosario's lack of remorse toward the victim as a factor in sentencing. Nonetheless, it was required to consider the evidence Rosario presented regarding his attempts at rehabilitation in the time since his initial sentencing. Here, the trial court did not address that evidence in imposing sentences that were substantially

higher than the ones it imposed prior to Rosario undertaking those rehabilitative efforts.

Next, we consider "[t]he findings upon which the sentence was based." 42 Pa.C.S. § 9781(d)(3). As we have already observed, the trial court's rationale for imposing the statutory maximums following resentencing was substantially identical to the reasoning it provided in support of Rosario's 2019 sentence. However, a trial court on resentencing may not mechanically reimpose its earlier sentence without considering any change in circumstances that may have arisen in the intervening years. *Jones*, *supra*, at 920 (citation omitted) ("Reimposing a judgment of sentence should not be a mechanical exercise."). The trial court relied on the same findings to support the 2022 sentence and 2019 sentence, but made no effort to explain why those findings supported a sentence substantially above the guidelines on resentencing when it initially found an aggravated range sentence to be appropriate. This was unreasonable.

Finally, we consider "[t]he guidelines promulgated by the commission" in assessing the reasonableness of a sentence. 42 Pa.C.S. § 9781(d)(4). In this respect, we reiterate that the guidelines already take into account the inherent egregiousness of a particular offense. *Robertson*, *supra*, at 1213. Thus, in sentencing outside of the guidelines, a trial court "must demonstrate that the case under consideration is compellingly different from the 'typical'

case of the same offense or point to other sentencing factors that are germane to the case before the court." *Id.*

Here, the minimum sentence imposed for aggravated assault with a deadly weapon was 24 months *above* the aggravated range of the guidelines. The minimum sentence for kidnapping was 48 months *above* the aggravated range of the guidelines, which the trial court calculated without the deadly weapon enhancement. While the trial court identified several "aggravating factors" to justify its sentence, it did not acknowledge any mitigating circumstances that emerged since the prior sentencing hearing or articulate why those factors supported a departure of six years from the aggravated range of the guidelines, particularly when it had previously found based on the same information that aggravated range sentences were appropriate. Under these circumstances, where the trial court relied on nearly identical rationale to impose a vastly increased sentence, we cannot conclude that it was reasonable for the trial court to exceed the guidelines.

Accordingly, we conclude that the trial court abused its discretion in resentencing Rosario to the statutory maximum sentences on the counts of aggravated assault and kidnapping. As our conclusion upsets the sentencing scheme, we vacate the sentence *in toto* and remand to the trial court to resentence Rosario and to provide adequate reasons for the length of sentence it imposes.

### III.

Next, we consider whether Rosario's sentence is illegal.[7] He argues that the trial court increased his sentences for aggravated assault with a deadly weapon and kidnapping without any objective information justifying the increase. Despite the decrease in his aggregate sentence, he contends that the trial court cannot overcome the presumption of vindictiveness following his successful first appeal and, as a result, his increased sentences at those counts violate his right to due process under the federal and state constitutions. In response to the trial court's reasoning that it is permitted to attempt to effectuate its original sentencing scheme on remand for resentencing, he argues that it offends due process to allow a court to reimpose an aggregate sentence that was deemed illegal. Additionally, he argues that the count of aggravated assault with a deadly weapon should have merged for sentencing purposes with the count of attempted homicide and that any additional sentence for aggravated assault is illegal.

### A.

In **North Carolina v. Pearce**, 395 U.S. 711 (1969), *overruled in part by* **Alabama v. Smith**, 490 U.S. 794 (1989),[8] the United States Supreme

---

[7] Whether a sentence is illegal is a question of law and our scope of review is plenary. **Commonwealth v. Maxwell**, 932 A.2d 941, 942 (Pa. Super. 2007).

[8] In **Alabama v. Smith**, 490 U.S. 794 (1989), the United States Supreme Court held that the presumption of vindictiveness in resentencing does not

*(Footnote Continued Next Page)*

Court held that "it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant *for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside*." *Id.* at 723-24 (emphasis added).

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726. The presumption of vindictiveness and prohibition thereon "emanates from the protections safeguarded to individuals by the Due Process Clause." *Commonwealth v. Prinkey*, 277 A.3d 554, 565 (Pa. 2022).

Rosario points to *Commonwealth v. Pearson*, 303 A.2d 481 (Pa. 1973), in support of his vindictiveness claim. There, the defendant was convicted of aggravated robbery on eleven separate indictments and received

---

arise when the initial sentence was based on a guilty plea and the second sentence followed a trial after the guilty plea was vacated. *Id.* at 795. It did not disturb *Pearce*'s general holding that a presumption of vindictiveness arises when a sentence is increased following a successful appeal without objective information justifying the increase. *Id.* at 799. *Smith* is consistent with *Pearce*'s pronouncement that an increased sentence should be based on new information appearing on the record following the initial proceedings.

sentences of five to ten years' imprisonment, consecutively, on eight of the cases. He received suspended sentences on the remaining three. He was subsequently granted a new trial after a direct appeal. He was retried on six of the indictments, found guilty on five, and was sentenced to consecutive terms of two to four years' imprisonment on each of the five cases, including one in which he had previously received a suspended sentence. *Id.* at 482.

On appeal, the defendant argued that his sentence of imprisonment on the indictment for which he had previously received a suspended sentence violated **Pearce**. Our Supreme Court agreed, holding that no "good cause," which is "limited to events occurring subsequent to the first trial," appeared of record to justify the increased sentence. *Id.* at 485. Notably, the Commonwealth argued in **Pearson** that the sentence was not vindictive because the aggregate sentence following the second trial was lower than that imposed after the first. Our Supreme Court summarily rejected that argument and held that "[t]he sentence imposed on each indictment is controlling." *Id.*

In **Commonwealth v. Barnes**, 167 A.3d 110 (Pa. Super. 2017) (*en banc*), a panel of this Court sitting *en banc* addressed an analogous vindictiveness claim. There, the defendant was convicted of attempted homicide, aggravated assault, kidnapping and recklessly endangering another person. He was sentenced to 20 to 40 years of incarceration for attempted homicide and consecutive terms of 2.5 to five years of incarceration for aggravated assault and kidnapping. On appeal, this Court determined that

the aggravated assault charge merged with the attempted homicide charge and remanded for resentencing. On remand, the trial court sentenced the defendant to 20 to 40 years of incarceration for attempted homicide and a consecutive term of five to ten years of incarceration for kidnapping, resulting in the same aggregate sentence as originally imposed. *Id.* at 115.

On appeal, the defendant argued that his increased sentence on the count of kidnapping was the result of judicial vindictiveness. We rejected this piecemeal approach to assessing vindictiveness and held that the aggregate sentence is controlling for evaluating such a claim. *Id.* at 124-25. "Indeed, a trial court properly may resentence a defendant to the ***same aggregate sentence*** to preserve its original sentencing scheme." *Id.* at 124 (emphasis in original). Thus, while the sentence for kidnapping had increased, the aggregate sentence remained the same and the defendant was not entitled to relief under ***Pearce***. *Id.* at 125.

***Barnes*** is controlling here. Unlike the defendant in ***Barnes***, Rosario benefited on resentencing by over ten years—his second sentence was reduced in aggregate from 35.5 to 90 years' incarceration to 25 to 50 years' incarceration. It is of no moment that the individual sentences imposed for aggravated assault with a deadly weapon and kidnapping were increased, as the overall sentence was substantially reduced. The trial court explained in its opinion that it intended to preserve the initial sentencing scheme,

consistent with *Barnes*. Trial Court Opinion, 9/30/22, at 13-15. This is sufficient to rebut the presumption of vindictiveness and no relief is due.

Rosario's argument based on *Pearson* is squarely foreclosed by *Barnes*, which was also decided on due process grounds. In *Pearson*, the defendant was convicted on different indictments for different criminal episodes and his sentence for one of those indictments was unjustifiably increased following his direct appeal. Here, much like in *Barnes*, Rosario was sentenced for multiple counts occurring in the same indictment for the same criminal episode. Regardless of the individual sentences imposed on the counts of aggravated assault with a deadly weapon and kidnapping, his overall sentence was reduced substantially following his successful appeal. Under *Barnes*, no presumption of vindictiveness arises in this circumstance. Rosario is due no relief on this claim.

**B.**

Finally, we turn to whether the counts of attempted homicide and aggravated assault with a deadly weapon merge for sentencing purposes.[9]

---

[9] The Commonwealth complains in its brief that litigants should not be permitted to raise legality of sentence claims for the first time on appeal and "urge[s] this Court and the appellate courts of this Commonwealth to reconsider the jurisprudence of this procedural morass." Commonwealth's Brief at 23-24 n.3. However, it does not dispute that our Supreme Court has repeatedly held that merger claims implicate the legality of a sentence and are not waivable. *See*, *e.g.*, *Commonwealth v. Edwards*, 256 A.3d 1130, 1136 (Pa. 2021). It is beyond cavil that this Court is bound by our Supreme Court's pronouncements. *See Commonwealth v. Volk*, 138 A.3d 659, 663
*(Footnote Continued Next Page)*

Offenses merge when "the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9765. Here, it is undisputed that both offenses arose from Rosario's single criminal act of firing a gun into the back of the victim's head. Accordingly, our analysis is limited to whether all of the elements of attempted homicide are included in the elements of aggravated assault with a deadly weapon or *vice versa*.

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901. First-degree murder is a criminal homicide "committed by an intentional killing." 18 Pa.C.S. § 2502(a). "Thus, a conviction for attempted murder requires that the Commonwealth prove beyond a reasonable doubt that the defendant had the specific intent to kill and took a substantial step toward that goal." *Commonwealth v. Predmore*, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*) (citation omitted). As relevant here, a person is guilty of aggravated assault under subsection 2702(a)(4) if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4). The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or

---

(Pa. Super. 2016) (citing *Commonwealth v. Friday*, 90 A.2d 856, 859 (Pa. Super. 1952)).

substantial pain" and includes "[a]ny firearm" within the definition of "deadly weapon." 18 Pa.C.S. § 2301.

In **Commonwealth v. Edwards**, 256 A.3d 1130 (Pa. 2021), our Supreme Court explained that merger requires an analysis of the elements of the statute, not the specific facts of the case at issue. **See id.** at 1137-38. There, the Court held that aggravated assault and recklessly endangering another person (REAP) did not merge, even when arising out of a single act, when not all statutory alternatives for the former crime were subsumed by the elements of the latter. **Id.** at 1139. The crime of aggravated assault under subsection 2702(a)(1) prohibited both *actually* causing serious bodily injury and *attempting* to cause serious bodily injury, while REAP required a showing of actual danger of death or serious bodily injury. **Id.** at 1135. The defendant was convicted for a single act of actually inflicting serious bodily injury on the victim. Nevertheless, our Supreme Court held that the charges did not merge for sentencing purposes because it is possible to attempt to put someone in danger of serious bodily injury under subsection 2702(a)(1) without actually doing so under the REAP statute. **Id.** at 1138 (citing **Commonwealth v. Cianci**, 130 A.3d 780, 782 (Pa. Super. 2015)).

While we have not previously addressed whether attempted homicide merges with aggravated assault with a deadly weapon, we have analyzed other subsections of the aggravated assault statute for merger with attempted homicide. We have held that aggravated assault under subsection 2702(a)(1)

is a lesser included offense of attempted homicide. **See Barnes**, **supra**, at 120 n.8. In contrast, in **Commonwealth v. Johnson**, 874 A.2d 66 (Pa. Super. 2005), we held that attempted homicide does not merge with aggravated assault of a police officer under subsection 2702(a)(2) because the crimes each include elements not required by the other: attempted homicide requires proof of a specific intent to kill, and aggravated assault of a police officer requires proof that the victim was an enumerated officer performing official duties. **Id.** at 71.

Rosario relies on **Commonwealth v. Anderson**, 650 A.2d 20 (Pa. 1994), for the proposition that aggravated assault is a lesser included offense of attempted homicide because it is "tautologous that one cannot kill without inflicting serious bodily injury." Rosario's Brief at 47 (citing **Anderson**, **supra**, at 583). However, **Anderson** was decided in 1994 and predates the current merger statute. We have previously recognized that **Anderson**'s approach to merger is no longer instructive since the legislature adopted the merger statute. **See Commonwealth v. Coppedge**, 984 A.2d 562, 564 (Pa. Super. 2009) ("The legislature has thus rejected the prior common law approach to merger espoused in [**Anderson**]. . . . Whether or not the facts of this case comprise both crimes, if the crimes themselves can result in committing one without committing the other, the elements in general are different, and the legislature has said merger cannot apply. The analyses by cases arising before the effective date of 42 Pa.C.S.A. § 9765 are therefore not instructive here.").

Here, the offenses of attempted homicide and aggravated assault with a deadly weapon both include elements that the other does not. Attempted homicide requires proof that the defendant had the specific intent to kill at the time he took the substantial step toward committing the murder. **Predmore**, **supra**. A defendant may commit aggravated assault with a deadly weapon without the specific intent to kill, as long as he intentionally or knowingly causes or attempts to cause bodily injury. Similarly, aggravated assault with a deadly weapon requires proof that the defendant committed the offense while using a deadly weapon. 18 Pa.C.S. § 2702(a)(4). Attempted homicide does not, as it is certainly possible to attempt to kill another without employing a weapon, such as by manual strangulation. Thus, because both offenses include elements that the other does not, they do not merge for sentencing purposes under the statute even when based on the same criminal act. **Jones**, **supra**; **Edwards**, **supra**. No relief is due on this claim.

Affirmed in part. Reversed in part. Remanded with instructions. Jurisdiction relinquished.

President Judge Panella dissents.

President Judge Emeritus Bender joins the memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/21/2023